PACKER COLLEGIATE INSTITUTE, Appellant, *v.* THE UNIVERSITY OF THE STATE OF NEW YORK et al., Respondents.

Argued June 4, 1948; decided July 16, 1948.

*H. Gardner Ingraham* and *Henry A. Ingraham* for appellant.
I. The statute and regulations are unconstitutional in that they
deprive school owners, parents, teachers, children and others
of liberty, and citizens of privileges and immunities, secured by
the Fourteenth Amendment and by the principles of the First
Amednment of the Federal Constitution, and of rights and
liberty secured by sections 1 and 6 of article I of the New York
Constitution; and in that, thereby and otherwise, they threaten
to deprive plaintiff and others of property in violation of the

due process clauses of the Fourteenth Amendment and said section 6. (*Board of Education* v. *Barnette,* 319 U. S. 624; *People* v. *Stanley,* 81 Col. 276; *Columbia Trust Co.* v. *Lincoln Institute,* 138 Ky. 804; *Ralison* v. *Post,* 79 Ill. 567; *Wright* v. *State,* 21 Okla. Cr. 430; *People* v. *Realmato,* 294 N. Y. 45; *Tauza* v. *Susquehanna Coal Co.,* 220 N. Y. 259.) II. The statute and regulations impose restraints upon the free exercise of constitutional rights including fundamental rights of individual " liberty ". (*Thomas* v. *Collins,* 323 U. S. 516; *Lovell* v. *Griffin,* 303 U. S. 444; *Schneider* v. *State,* 308 U. S. 147; *Grosjean* v. *American Press Co.,* 297 U. S. 233; *Largent* v. *Texas,* 318 U. S. 418; *Prince* v. *Massachusetts,* 321 U. S. 158; *Thornhill* v. *Alabama,* 310 U. S. 88; *Valentine* v. *Chrestensen,* 316 U. S. 52; *Board of Education* v. *Barnette,* 319 U. S. 624; *People* v. *Kuc,* 272 N. Y. 72; *People* v. *Barber,* 289 N. Y. 378.) III. The statute and regulations discriminate against persons, firms and corporations other than established religious groups and thereby deny plaintiff equal protection of the laws in violation of the Fourteenth Amendment of the Federal Constitution and section 11 of article I of the New York Constitution. (*Korematsu* v. *United States,* 323 U. S. 214; *Oyama* v. *California,* 332 U. S. 633; *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Skinner* v. *Oklahoma,* 316 U. S. 535; *Smith* v. *Cahoon,* 283 U. S. 553.) IV. The statute delegates legislative power in violation of section 1 of article III of the New York Constitution, and thereby threatens to deprive plaintiff of its property in violation of the due process clauses of the Fourteenth Amendment of the Federal Constitution and section 6 of article I of the New York Constitution. (*Matter of Seignious* v. *Rice,* 273 N. Y. 44; *Darweger* v. *Staats,* 267 N. Y. 290.) V. The statute contains no provisions for notice, hearing, findings, argument or review, and thereby threatens to deprive plaintiff and others of procedural due process of law in violation of the Fourteenth Amendment of the Federal Constitution and section 6 of article I of the State Constitution. (*Morgan* v. *United States,* 298 U. S. 468, 304 U. S. 1; *United States* v. *Morgan,* 307 U. S. 183, 313 U. S. 409; *Matter of Elite Dairy Products, Inc.,* v. *Ten Eyck,* 271 N. Y. 488; *Matter of Niagara Frontier Milk Prod. Agency* v. *Du Mond,* 297 N. Y. 75; *Cantwell* v. *Connecticut,* 310 U. S. 296.)

*Paxton Blair* for The Guild of Independent Schools of New York, Inc., *amicus curiæ,* in support of appellant's position. In the field of education there has always been manifest a marked diversity of outlook both as to the aim of education, and as to what a curriculum should contain. In conferring upon the department of education what amounts to a power to suppress diversity of views and to discourage experimentation, the challenged statute impairs freedom of thought and expression, in violation of constitutional guarantees. (*Stuart* v. *Palmer,* 74 N. Y. 183; *West Virginia State Board of Education* v. *Barnette,* 319 U. S. 624; *Pierce* v. *Society of Sisters,* 268 U. S. 510; *United States* v. *Ballard,* 322 U. S. 78.)

*Nathaniel L. Goldstein, Attorney-General (John R. Davison, Wendell P. Brown* and *Ronald E. Coleman* of counsel), for respondents. I. The enactment of the statute constitutes a determination by the Legislature that a substantial evil existed in the lack of any direct responsible control over nonsectarian private nursery, kindergarten and elementary schools which threatened the health, safety, morals and general welfare of young children of the State. The manifest purpose of the statute and the regulations promulgated thereunder is protection of children from such ever present and immediate dangers. The statute and the regulations are appropriate means to these ends. (*McCulloch* v. *Maryland,* 4 Wheat. 316, 421; *People* v. *Schweinler Press,* 214 N. Y. 395; *Institute of Metropolis, Inc.,* v. *University of State,* 249 App. Div. 33; *Purity Extract Co.* v. *Lynch,* 226 U. S. 192; *People* v. *Arlen Service Stations,* 284 N. Y. 340; *People* v. *American Socialist Soc.,* 202 App. Div. 640; *Matter of Viemeister,* 179 N. Y. 235; *Holden* v. *Hardy,* 169 U. S. 366; *Erie R. R. Co.* v. *New York,* 233 U. S. 671; *Munn* v. *Illinois,* 94 U. S. 113; *United States* v. *Carolene Products Co.,* 304 U. S. 144.) II. The classification made by the statute by excepting from its application schools maintained by established religious groups is not an arbitrary one. (*People* v. *American Socialist Soc.,* 202 App. Div. 640; *Tignar* v. *Texas,* 310 U. S. 141; *People ex rel. Bryant* v. *Zimmerman,* 241 N. Y. 405; *Matter of Williams* v. *Walsh,* 289 N. Y. 1; *Radice* v. *New York,* 264 U. S. 292; *Keokee Coke Co.* v. *Taylor,* 234 U. S. 224.) III. Practice, authority and the Constitution itself have long sanctioned

such a delegation and exercise of powers as here assailed. (*Bullock* v. *Cooley,* 225 N. Y. 566; *Douglas* v. *Nobel,* 261 U. S. 165; *Matter of Davis* v. *Sexton,* 211 App. Div. 233; *Matter of Dr. Bloom, Dentist, Inc.,* v. *Cruise,* 259 N. Y. 358; *Institute of Metropolis, Inc.,* v. *University of State of N. Y.,* 159 Misc. 529, 249 App. Div. 33, 274 N. Y. 504; *Matter of Marburg* v. *Cole,* 286 N. Y. 202.) IV. The statute does not violate the procedural due process requirement of the Fourteenth Amendment of the Federal Constitution or section 6 of article I of the State Constitution. (*Matter of Elite Dairy Products* v. *Ten Eyck,* 271 N. Y. 488; *Highland Farms Dairy* v. *Agnew,* 300 U. S. 608.)

DESMOND, J. Plaintiff has for many years conducted at Brooklyn, N. Y., a private nonsectarian school for girls, consisting of these departments : nursery or preschool, kindergarten, elementary or primary, high school or secondary, and two-year junior college. It sues herein for a declaration of unconstitutionality of a statute, which when this suit was brought, and as last amended by chapter 214 of the Laws of 1945, appeared in the State Education Law as paragraph 5 of subdivision B of section 625 of the Education Law, section 625 being headed " Amount and character of required attendance ", and subdivision B of section 625, in which paragraph 5 is found, carrying the subheading " Attendance elsewhere than at a public school ", the whole article 23 being entitled " COMPULSORY EDUCATION ". Paragraph 5 read, when this litigation began, as follows: " 5. No person or persons, firm or corporation, other than the public school authorities or an established religious group, shall establish or maintain a nursery school and/or kindergarten and/or elementary school giving instruction in the subjects included in section six hundred and twenty, subdivision c, paragraph one-a, of this article, unless the school is registered under regulations prescribed by the board of regents. Upon complying with the said regulations and after payment of a fee of twenty-five dollars a certificate of registration shall be issued by the department which shall be valid for a period of two years from the date of issuance unless suspended or revoked within said period pursuant to said regulations. Such registration may be renewed biennially thereafter upon the payment of a renewal registration fee of twenty-five dollars."

The quoted statute, pursuant to a 1947 revision of the Education Law (L. 1947, ch. 820), has now become paragraph e of subdivision 2 of section 3210 of the Education Law, but it is identical with the above except for immaterial changes of wording. A violation thereof is punishable criminally, by fine or imprisonment (former § 641, now Education Law, § 3228).

It is stipulated herein that plaintiff, by reason of its character and standing, would be entitled to a license if it should apply therefor. However, it says the statute is invalid and chooses to stand on that position and refuses to make application.

The quoted statute is, we think, patently unconstitutional as being an attempted delegation of legislative power, in violation of section 1 of article III of the New York State Constitution, which reads: " The legislative power of this State shall be vested in the Senate and Assembly.'' The statute before us is nothing less than an attempt to empower an administrative officer, the State Commissioner of Education, to register and license, or refuse to register and license, private schools, under regulations to be adopted by him, with no standards or limitations of any sort. The Legislature has not only failed to set out standards or tests by which the qualifications of the schools might be measured, but has not specified, even in most general terms, what the subject matter of the regulations is to be. It is impossible, from any examination of this subdivision, or of the section or the article in which it appears, or of the whole Education Law, to know what aspects or activities of the schools were to be governed by the regulations, much less what the regulations were to accomplish, or what were to be their limits. Only the wildest guessing could give us any idea of what the Legislature had in mind. Surely this does not meet the test of *Matter of Small* v. *Moss* (279 N. Y. 288, 299): " The Legislature must set bounds to the field, and must formulate the standards which shall govern the exercise of discretion within the field. Without the second rule as a corollary to the first rule there would be no effective restraint upon unfair discrimination or other arbitrary action by the administrative officer." Thus there must be a clearly delimited field of action and, also, standards for action therein. Here we have neither. This is not really a question of what powers of control over

private schools may validly be delegated by the Legislature. It is here impossible to discover what authority was intended to be turned over. The commissioner is left " without check or guidance " to do what he will with these schools; and the statute's validity must be judged not by what has been done under it but " by what is possible under it " (see *People* v. *Klinck Packing Co.,* 214 N. Y. 121, 138, 139). The Legislature may, of course, leave " ' execution and details ' " to the administrators, but the Legislature must at least furnish those administrators with " ' rules and principles ' " for guidance (see *Darweger* v. *Staats,* 267 N. Y. 290, 306). The Federal rule is the same. From *Field* v. *Clark* (143 U. S. 649) and *United States* v. *Grimaud* (220 U. S. 506) down to *Panama Refining Co.* v. *Ryan* (293 U. S. 388) and *Schechter Corp.* v. *United States* (295 U. S. 495) the Supreme Court has repeatedly denied the power of Congress to delegate its lawmaking function, while permitting it to delegate the power to determine the existence of the facts which make the law applicable or inapplicable, and to fill in the details of regulation. The application of that principle to licensing statutes is plainly shown by the *Grimaud* case (*supra*), where the Supreme Court found a licensing statute not unconstitutional for excessive delegation, but only because Congress had marked out a field for the Secretary of Agriculture. The statute was so drawn, said the court, that the Secretary of Agriculture " could not make rules and regulations for any and every purpose. * * * As to those here involved, they all relate to matters clearly indicated and authorized by Congress. The subjects as to which the Secretary can regulate are defined." (P. 522.)

Nor is this a case where the field and limits of action, while not immediately expressed, can be found elsewhere in the law. Article 23 of the Education Law (now art. 65) in which this law is found, deals from first to last, as its title shows, with " COMPULSORY EDUCATION ". Section 625 (now § 3210), of which this particular subdivision is in part, has to do, as its heading shows, with " Amount and character of required attendance." But it cannot be that the Legislature was instructing the commissioner to make regulations concerning attendance only, since the character and amount of compulsory attendance in both private and public schools was already minutely regulated in

other parts of section 625 (now § 3210) and elsewhere in article 23 (now art. 65). Try as we will to avoid invalidating this enactment, we cannot find in it, or around it, express or implied, any standards at all. To be frank, we cannot understand what it means or what it was intended to accomplish.

Holding as we do that the statute is unconstitutional, it is unnecessary to deal with the regulations actually promulgated by the commissioner thereunder. However, an examination of those regulations is illuminating since they show, we think, that the commissioner, left without legislative guidance, proceeded to legislate, broadly and in many different areas. Summarized, those regulations provide that each such school shall apply for registration under forms prescribed by the commissioner, who shall determine the school's eligibility for registration on the facts presented; that registration shall be given only for a number of children to be specified by the commissioner, but not fewer than six children; that the program, curriculum and financial resources of the school must meet standards to be approved by the commissioner; that the qualifications of the teachers shall be up to those of the public school; that the number of children per teacher shall not be too large for proper education; that there shall be adequate equipment and space, adequate provisions for health and sanitation and fire escapes, adequate opportunities for " parent education " and adequate record-keeping; that the schools shall be in session approximately the same number of days as the public schools, and that no school shall be registered if it puts out misleading advertising. A comparison of those regulations with the bare and meager language of the statute forces the conclusion that, however good or bad the commissioner's rules may be, they were not controlled, suggested or guided by anything in the statute. It is to be doubted that the Legislature had in mind the requiring of financial statements from nursery schools, or that it expected that the rules would mandate " parent education " in kindergartens. At any rate, the statute contains no declaration of purpose or policy, general or particular, and the commissioner was left to make such laws as he thought wise — which he proceeded to do.

This is no small or technical matter we deal with here. Private schools have a constitutional right to exist, and parents

have a constitutional right to send their children to such schools (*Pierce* v. *Society of Sisters,* 268 U. S. 510). The Legislature, under the police power, has a limited right to regulate such schools in the public interest (*Pierce* v. *Society of Sisters, supra*; *Meyer* v. *Nebraska,* 262 U. S. 390). Such being the fundamental law of the subject, it would be intolerable for the Legislature to hand over to any official or group of officials, an unlimited, unrestrained, undefined power to make such regulations as he or they should desire, and to grant or refuse licenses to such schools, depending on their compliance with such regulations.

It is unnecessary to discuss other specifications of alleged unconstitutionality urged by plaintiff-appellant.

The judgment should be reversed, without costs, and the case remitted to the Appellate Division with instructions to enter a judgment declaring the statute void as contravening section 1 of article III of the New York State Constitution.

FULD, J. (concurring). I concur in the conclusion reached by Judge DESMOND for reversal. With him, I agree that the statute (Education Law, § 3210, subd. 2, par. e) invalidly delegates legislative power to the Commissioner of Education in violation of section 1 of article III of the Constitution of the State of New York. However, I go further: I believe that the provision also offends against both Federal and State Constitutions in that it denies to plaintiff and to other nonsectarian schools the equal protection of the laws (U. S. Const., 14th Amendt.; N. Y. Const., art. I, § 11).

LEWIS, J. (dissenting). Although counsel for the appellant has argued before us that paragraph 5 of subdivision B of section 625 of the Education Law, violates in several respects both the Federal and the State Constitutions, the decision by a majority of the court rests upon a single assignment of invalidity — that the challenged statute is " an attempted delegation of legislative power, in violation of section 1 of article III of the New York State Constitution ". I cannot assent to that conclusion.

It is my view that this is one of those instances — of which the Education Law furnishes many examples — when legislation must be adapted to complex conditions prevailing in a technical field and involving details with which the Legislature

has found it difficult to deal directly. (See Education Law, §§ 132, 207, 210, 211, 215, 216, 218, 219, 254, 301, 305, 3004, 5001, 5002, 6608–6609, 6705, 6803, 6805, 7005, 7205, 7303, 7404, 7503.) On that subject I may well cite the comment by Mr. Justice Foster writing for the Appellate Division in this case — " If plaintiff's argument is sound [on the asserted unconstitutional delegation of legislative power] the whole educational system of the State is subject to attack, for inherent in the system are innumerable instances of delegated power to make rules and regulations." (273 App. Div. 203, 209.)

Of the many rulings by this court which give direction to our inquiry, I choose two: In *People* v. *Charles Schweinler Press* (214 N. Y. 395) the court (per Hiscock, J.) stated (p. 406): " In considering legislation adopted for such a purpose we must start out with the presumption that it is constitutional and valid. (*People ex rel. Kemmler* v. *Durston,* 119 N. Y. 569, 577.) If the statute upon its face appears to be reasonable and just and appropriate, and we can fairly believe that its natural consequences will be in the direction of betterment of public health and welfare, and, therefore, that it is one which the state for its protection and advantage may enact and enforce, it will be the duty of the courts to pronounce it constitutional even though they should doubt its wisdom. (*People* v. *Klinck Packing Co.,* 214 N. Y. 121; *Holden* v. *Hardy,* 169 U. S. 366, 395.) Or, to state the rule in converse form, before we can pronounce such a statute as that now before us unconstitutional we must be able to see either that there is no real, substantial evil of public interest to be guarded against or that there is no reasonable relation between the evil and the purported cure or prevention offered by the statute."

On an occasion twenty-five years later, when the question of statutory standards engaged the attention of the court, it was said (per Finch, J.) writing in *Matter of Marburg* v. *Cole* (286 N. Y. 202, 211–212): " The law is well settled that it is not always necessary that license legislation prescribe a specific rule of action. Where it is difficult or impractical for the Legislature to lay down a definite, comprehensive rule, a reasonable amount of discretion may be delegated to the administrative officials. (*People ex rel. Lieberman* v. *Van De Carr,* 199 U. S.

552, affg. 175 N. Y. 440.) Where the administrative agency has adopted a standard as an interpretation of the broad powers granted to it by the statute, we may declare such a standard invalid only in the event that it is so lacking in reason for its promulgation that it is essentially arbitrary.''

In the case at hand the prevailing opinion by Judge DESMOND criticises the challenged statute because it '' contains no declaration of purpose or policy, general or particular, and the commissioner was left to make such laws as he thought wise ''. Although there are instances where the Legislature has chosen to preface statutes with a formal declaration of policy I know of no legal requirement for such a formal declaration. Indeed there is distinguished authority for the statement recently made* that '' Often the purpose or policy that controls is not directly displayed in the particular enactment. Statutes cannot be read intelligently if the eye is closed to considerations evidenced in affiliated statutes, or in the known temper of legislative opinion.''

Nor do I think there is a valid basis for the condemnation, chiefly stressed in the prevailing opinion, that — '' The statute before us is nothing less than an attempt to empower an administrative officer, the State Commissioner of Education, to register and license, or refuse to register and license, private schools, under regulations to be adopted by him, with no standards or limitations of any sort.''

I am not unmindful of the rule of *Matter of Small* v. *Moss* (279 N. Y. 288, 299) cited in the prevailing opinion, — which rule requires that there be standards which govern the discretion to be exercised by the Legislature's delegate. We have seen, however, that such a rule is not rigid. (*Matter of Marburg* v. *Cole, supra,* pp. 211–212.) Upon that subject this court has aptly commented:

'' Authority to make administrative rules is not a delegation of legislative power, and such rules do not become legislation because violations thereof are punished as public offenses.

'' In this day when the demands upon the State Legislatures for necessary and important laws are increasing every year we

---

* '' Some Reflections on the Reading of Statutes '' (Sixth Annual Cardozo Lecture) by Mr. Justice FELIX FRANKFURTER.

must not be rigid in our construction of legislative power. More and more must the laws become general in form, leaving to commissions, boards or other administrative bodies the establishment of rules and regulations and the determination of the facts to which the general law will apply." (*Darweger* v. *Staats,* 267 N. Y. 290, 306.)

The delegation by the Legislature to an administrative agency of broad constitutional powers involving the exercise of reasonable discretion may be declared invalid only in the event it is so lacking in reason for its promulgation that it is essentially arbitrary. (*Matter of Marburg* v. *Cole, supra,* p. 212.) Accordingly, I believe the rule of *Matter of Small* v. *Moss* (*supra*) is satisfied if the statute involved — considered in its setting and with all reasonable implications therefrom — gives evidence that the Legislature was aware of the type of problem with which it had to deal. Where, as in this instance, problems peculiar to the conduct of schools of a certain type were to be met, it was obviously both difficult and impractical for the Legislature to formulate definite, comprehensive regulations to govern the registration and licensing of nursery schools, kindergartens and elementary schools. It thus became appropriate to delegate a reasonable amount of discretion to the Commissioner of Education to formulate such regulations.

When searching for standards in statutes delegating legislative power we may adopt a liberal view. (*Matter of Marburg* v. *Cole, supra; Darweger* v. *Staats, supra.*) In doing so in this case we are certainly permitted to assume awareness by the Legislature that the statute in question is a part of the Education Law. By the terms of the act the Commissioner of Education is chosen to administer the statute. It follows that the regulations to be promulgated by the commissioner, by necessary inference, bear some reasonable relation to education. The schools to be " registered " and regulated under the statute are expressly designated as private nursery, kindergarten and elementary schools, from which it follows that the regulations authorized must bear some reasonable relation to education furnished at schools of that character. As the statute is placed in article 65 of the Education Law — which article bears the caption " COMPULSORY EDUCATION AND SCHOOL CENSUS " — and is a subdivision of section 3210 of the same article, which section

is captioned " Amount and character of required attendance " — the regulations should bear some reasonable relation to the subjects dealt with under those sections. It is also to be noted, as to elementary schools at least, that section 3204 of article 65 provides — " A minor required to attend upon instruction by the provisions of part one of this article [relating to compulsory education] may attend at a public school *or elsewhere* " (subd. 1) and that " instruction given to a minor *elsewhere than at a public school* shall be at least substantially equivalent to the instruction given to minors of like age and attainments at the public schools of the city or district where the minor resides." (Subd. 2.) (Emphasis supplied.) The regulations to be promulgated by the commissioner should bear a reasonable relation to that statutory mandate.

The standards, in my opinion, are adequate. They are as adequate as those found sufficient by the United States Supreme Court in *Douglas* v. *Noble* (261 U. S. 165). The statute there under attack provided that only licensed persons should practice dentistry. Authority to license was vested in a board of examiners consisting of five practicing dentists. Every person of good moral character, with a degree from a recognized dental school, was declared eligible and — if he or she passed the examination — was entitled to a license. It is significant for our present inquiry that the statute there involved did not set out — except as already noted — standards or guides as to the character and scope of the examination required to be passed before the license could be issued. Nevertheless, the Supreme Court held (p. 169) : " The statute provides that the examination shall be before a board of practicing dentists; that the applicant must be a graduate of a reputable dental school; and that he must be of good moral character. Thus, the general standard of fitness and the character and scope of the examination are clearly indicated." And at pages 169–170, the court held further: " To determine the subjects of which one must have knowledge in order to be fit to practice dentistry; the extent of knowledge in each subject; the degree of skill requisite; and the procedure to be followed in conducting the examination; *these are matters appropriately committed to an administrative board.*" (Emphasis supplied.)

In the present case, as in many other instances found in the

Education Law (cited *supra*) the Legislature, by its enactment, legislated as far as was reasonably practical upon a subject with which it was called upon to deal in the troublesome field of education. From the necessities of the case there was left with the Commissioner of Education — the chief administrative officer of the Board of Regents (N. Y. Const. art. V, § 4) — the duty of formulating the " regulations " prescribed by the statute as means to bring about the result which the Legislature intended to accomplish. We may assume, until the contrary is proven, that the Commissioner of Education — a constitutional officer — has acted in obedience to the statutory duty thus imposed. As I view the record no rule of constitutional law was thereby violated.

Accordingly, I dissent and vote to affirm the judgment entered upon the order of the Appellate Division.

LOUGHRAN, Ch. J., and DYE, J., concur with DESMOND, J.; FULD, J., concurs in separate opinion; LEWIS, J., dissents in opinion in which THACHER, J., concurs; CONWAY, J., taking no part.

Judgment reversed, etc.