In the Matter of FEDERAL TELEPHONE & RADIO CORP., Appellant. EDWARD CORSI, as Industrial Commissioner, Respondent.

Argued March 3, 1950; decided May 25, 1950.

*D. Nelson Adams, Rufus D. McDonald* and *Richard C. Woods* for appellant. I. The transfer of the contribution rate credit under the Unemployment Insurance Law [Labor Law, art. 18] in effect in 1945 was subject only to the commissioner's power to prescribe the necessary procedural requirements. The requirements of paragraph (d) of subdivision 1 of section 577 cannot be construed as limiting the transfer of earned credits under subdivision 4. (*Matter of Newspaper P. M. [Corsi]*, 274 App. Div. 569, 299 N. Y. 702.) II. Subdivision 4 of section 577 cannot be construed as empowering the commissioner to determine the right of employers to transfer earned credits in view of the serious constitutional questions which any such construction would invoke. (*People* v. *Klinck Packing Co.*, 214 N. Y. 121; *Packer Collegiate Inst.* v. *University of State of N. Y.*, 298 N. Y. 184; *Schechter Poultry Corp.* v. *United States*, 295 U. S. 495; *United States* v. *Grimaud*, 220 U. S. 506.) III. In promulgating rule 3, the commissioner exceeded the powers conferred upon him by section 577 of the Unemployment Insurance Law, and the determination of the Unemployment Insurance Appeal Board that the rule is invalid should be

confirmed. (*Bielke* v. *American Crystal Sugar Co.*, 206 Minn. 308; *Schumer* v. *Caplin*, 241 N. Y. 346; *Gerber* v. *Seaich Realty Co.*, 259 App. Div. 667; *Acorn Employment Service* v. *Moss*, 292 N. Y. 147; *Matter of Cherry* v. *Board of Regents*, 289 N. Y. 148; *Brown* v. *University of State of N. Y.*, 266 N. Y. 598; *Addison* v. *Holly Hill Fruit Products*, 322 U. S. 607.) IV. The amendment of section 577 in 1947 (ch. 780), imposing substantive requirements upon the right of employers to transfer earned credits, necessarily constituted a change in the previously existing law. (*People ex rel. Sheldon* v. *Board of Appeals of City of N. Y.*, 234 N. Y. 484; *Mabie* v. *Fuller*, 255 N. Y. 194.)

*Nathaniel L. Goldstein, Attorney-General* (*Francis R. Curran* and *Wendell P. Brown* of counsel), for respondent. I. The Industrial Commissioner properly denied the application for the transfer of the contribution rate credit issued for the year 1945. (*People* v. *Fishbough*, 134 N. Y. 393; *Karst* v. *Gane*, 136 N. Y. 316; *Matter of Brooklyn Edison Co.* v. *Davidson*, 269 N. Y. 48; *Matter of Newspaper P. M.* [*Corsi*], 274 App. Div. 569, 299 N. Y. 702; *Matter of Hinzmann & Waldmann, Inc.* [*Corsi*], 274 App. Div. 1009; *Matter of Wolin & Ross, Inc.* [*Corsi*], 276 App. Div. 236.) II. The promulgation of rule 3 by the Industrial Commissioner was a valid exercise of his power. (*Matter of Mounting & Finishing Co.* v. *McGoldrick*, 294 N. Y. 104; *Red Hook Cold Storage Co.* v. *Department of Labor*, 295 N. Y. 1; *Madison Trust Co.* v. *Carnegie Trust Co.*, 215 N. Y. 475; *People* v. *Long Island R. R. Co.*, 194 N. Y. 130.)

FROESSEL, J. The question here presented concerns the right of the appellant, Federal Telephone & Radio Corp., to transfer to Federal Telecommunication Laboratories, Inc. (hereinafter called '' Laboratories '') a contribution rate credit for the year 1945, granted to appellant under section 577 of the Unemployment Insurance Law (Labor Law, art. 18). The Appellate Division has reversed on the law the decision of the Unemployment Insurance Appeal Board which permitted such transfer, and has confirmed the Industrial Commissioner's denial of appellant's application.

The undisputed facts show that appellant, a manufacturer of radio and telephone parts, had departmentalized its business into a laboratory division, a patent division, and a service divi-

sion. Pursuant to a decentralization plan, effective July 1, 1945, appellant transferred to its wholly owned subsidiary, Laboratories, the plant and equipment which had formerly been the laboratory division. The assets transferred amounted to a gross value of almost $2,500,000; only office furniture and a few other items, valued at less than $10,000, were retained by appellant.

All the employees of the laboratory division, aggregating over one thousand, were transferred to Laboratories, with no change in the location or nature of their work or working conditions, and appellant retained about twenty-five employees in the patent and service divisions. After the transfer, appellant ceased laboratory operations but operated the former patent and service divisions, and paid contributions on the wages of its few remaining employees.

Shortly before this transfer, the Industrial Commissioner had issued to appellant a contribution rate credit of approximately $23,000. This credit had been earned by appellant on the basis of its previous employment record and was applicable against contributions due during the year beginning July 1, 1945. Since appellant had retained only a few employees, it could not use the credit and sought to transfer it.

The commissioner denied the transfer on the authority of his rule 3, which permitted credits to be transferred only (subd. b) if

"(1) the acquiring employer has acquired all or substantially all of the assets of the transferring employer, and

"(2) the transferring employer discontinues operations not later than the date of such acquisition and has submitted all reports on the wages paid by him to the date of acquisition". (N. Y. Official Compilation of Codes, Rules & Regulations [1948 Supp.], p. 988; Div. of Placement & Unemployment Ins.)

Since it is clear that appellant did not discontinue operations, it did not meet the requirements of rule 3.

It is our view, however, that rule 3 is invalid. Respondent contends that the rule properly interprets section 577 of the Unemployment Insurance Law, which provided:

" *Contribution rate credits.* 1. Meaning of terms. * * *

"(d) ' Qualified employer ' means any employer who in each of the thirteen consecutive calendar quarters immediately pre-

ceding the computation date was required to file and filed all contribution reports prescribed by the commissioner and has paid contributions due thereon before the cut-off date. *If an employer has acquired all or substantially all the assets of another employer and such other employer has discontinued operations upon such acquisition,* the period of liability of both employers during such period shall be jointly considered for all purposes of this section. * * *

" 4. * * * No credit shall be *transferable* by any employer to his successor or *anyone else* except in accordance with *such rules as the commissioner may prescribe.*" (Emphasis supplied.)

It will be noted that the commissioner has imported into his rule 3, formulated to interpret subdivision 4 of section 577, the restrictions which are found in paragraph (d) of subdivision 1 of that section. However, paragraph (d) of subdivision 1 is in nowise concerned with the *transfer* of credits already earned; it relates to the earning of credits in the first instance. The statutory scheme is clear — paragraph (d) of subdivision 1 relates to the earning of credits by a " qualified employer " and subdivision 4 to their transfer by " any employer to his successor or anyone else " — and the commissioner had no authority to transpose standards appropriate to the former and apply them to the latter situation. In so doing, he was setting up substantive standards for the transfer of credits which are found neither expressly nor by necessary implication in the statute.

In effect, the commissioner, in contravention of the authority given him in section 530 of the statute to " administer " the law and " for such [administrative] purposes " only to make rules and regulations, has assumed legislative authority. His action is therefore, on familiar principles, invalid (*Packer Collegiate Inst.* v. *University of State of N. Y.,* 298 N. Y. 184; *Matter of Levine* v. *O'Connell,* 275 App. Div. 217, affd. 300 N. Y. 658). *Matter of Newspaper P. M. (Corsi)* (274 App. Div. 569, affd. 299 N. Y. 702) relied on by respondent, has no application here, since it dealt with the earning of credits, rather than their transfer.

The order of the Appellate Division should be reversed, and the decision of the Unemployment Insurance Appeal Board confirmed, with costs in this court and in the Appellate Division.

DYE, J. (dissenting). I dissent and vote for affirmance. By the decision about to be made herein, a majority of the court recognizes that the appellant has the unrestricted power to transfer its contribution rate credits to a person or party not meeting the statutory definition of a " qualified " employer and this in face of the clear consequence that such a transfer will not only be detrimental to the administration of the fund as a whole but will deprive other " qualified " employers of their inherent right to have the protection of as great a total amount of credits as possible. I am sure the Legislature never intended to place such a " windfall " asset at the unrestricted disposal of a transferring employer or, to put it another way, to empower a " qualified " employer to confer a benefit upon other than a " qualified " successor.

The appeal challenges an administrative determination. This, by a well-recognized rule of review, we are to accept if there be " warrant in the record " and a " reasonable basis in law " for the action taken (*Red Hook Cold Storage Co.* v. *Department of Labor,* 295 N. Y. 1, 9; *Rochester Tel. Corp.* v. *United States,* 307 U. S. 125). We are all in agreement with the courts below that, if the commissioner's rule 3 is valid, this dual test has been satisfied as there is proof in the record that Federal did not transfer all or substantially all of its assets to Laboratories and did not discontinue operations following such transfer. In the majority view, however, rule 3 — particularly in paragraphs (1) and (2) of subdivision b thereof — expresses substantive rather than procedural standards and, as such, represents therefore an unauthorized assumption of legislative prerogatives by the commissioner as he has, quite apparently, predicated his rule on that subdivision of the statute (Labor Law [Unemployment Insurance Law], § 577, subd. 1, par. [d]) which defined an employer qualified in the first instance to receive contribution rate credits: Subdivision 4, relating to credit *transfers,* is silent as to qualifications beyond authorizing " such rules as the commissioner may prescribe " (Labor Law, § 577, subd. 4).

Absent a showing to the contrary, we should presume that, prior to promulgating rule 3, the commissioner satisfied himself as to the legislative scheme by a reading of the entire statute and that he designed the rules setting forth the admin-

istrative procedures called for by the statute to reflect reasonably its intent and purpose. In prescribing rule 3 to govern credit transfers therefore, he merely reiterated the statutory definition for a " qualified employer ", stating that (1) the acquiring employer must have acquired all or substantially all of the assets of the transferring employer and that (2) the transferring employer must discontinue operations. In short, he saw a necessary relation between the original earning of credits and the ability to take such credits from one who had earned them. Yet a majority is about to say that such a rule has no reasonable basis in law and is improper.

I am unable to agree that this is such an innovation or departure from the statute as to amount to the *creation* of unauthorized substantive standards. The statute, when read as a whole, offers a comprehensive scheme for the earning — and the incidental transfer — of contribution rate credits. By looking to the earning requirements as indicative of the status of an employer to receive these credits, the rule adopted by the commissioner introduces *no new element,* nor does it in any way impinge upon the overall legislative program. I find it strange, indeed, to interpret the statute as prohibiting the application of standards set up for a qualified employer to a successor employer, particularly when the statute, in defining a qualified employer, declared that both qualified and successor employers " shall be jointly considered for *all purposes* of this section." (Emphasis supplied.) (§ 577, subd. 1, par. [d].) Furthermore we may note that, by a recent amendment, the Legislature has given an unconditional indorsement to the view of the commissioner by adopting in the statute precisely those standards previously incorporated in rule 3 (L. 1947, ch. 780). This situation has, thus, been corrected for the future.

As I regard it then, the construction placed upon the law, as it then existed, was entirely reasonable and well within the administrative discretion conveyed by the grant of rule-making powers. While recognizing that problems of statutory construction are primarily for the courts, I nevertheless believe it well established that this function of the court is somewhat limited when the question involved turns upon the application of a broad statutory phrase by an administrative agency (see *National Labor Relations Bd.* v. *Hearst Publications,* 322 U. S.

111, 131). We have said on another occasion: "it is not always necessary that license legislation prescribe a specific rule of action. Where it is difficult or impractical for the Legislature to lay down a definite, comprehensive rule, a reasonable amount of discretion may be delegated to the administrative officials. (*New York ex rel. Lieberman* v. *Van De Carr*, 199 U. S. 552, affg. 175 N. Y. 440.) Where the administrative agency has adopted a standard as an interpretation of the broad powers granted to it by the statute, we may declare such a standard invalid only in the event that it is so lacking in reason for its promulgation that it is essentially arbitrary." (*Matter of Marburg* v. *Cole*, 286 N. Y. 202, 211–212.)

Nor can I see any necessary or compelling similarity to the statute examined in *Packer Collegiate Inst.* v. *University of State of N. Y.* (298 N. Y. 184, 189) where "Only the wildest guessing could give us any idea of what the Legislature had in mind." The statute in *Matter of Levine* v. *O'Connell* (300 N. Y. 658) was similarly so unlike that here considered as to make it inapplicable to this case. Here we have a precise statutory definition of an employer "qualified" to earn credits and an overall scheme for the transfer of such credits as are earned.

On at least one prior occasion we have refused to review and thus perhaps impliedly upheld the commissioner's right to set up the standards of paragraph (d) of subdivision 1 to govern the transfer of credits under subdivision 4 (*Matter of Hinz-mann & Waldmann* [*Corsi*], 274 App. Div. 1009, motion for leave to appeal denied 300 N. Y. 761). While that case turned on a definition of gross as opposed to net assets — a somewhat different proposition than here but resulting in a disallow-ance of the credit — the decision was implicit with the same reasoning.

Rule 3, then, should not be condemned simply because it incorporates as a part thereof what may be characterized as "substantive standards" when such standards are drawn verbatim from the express statutory language and, when con-strued as a whole, are found to be in complete harmony with the legislative scheme. It is only where no "reasonable basis in law" can be discovered — where, in other words, the statute provides *no* criteria to guide the administrator in the exercise of rule-making powers — that a regulation promulgated there-

under is to be stricken (*Matter of Levine* v. *O'Connell, supra*; *Packer Collegiate Inst.* v. *University of State of N. Y., supra*; cf. *Schechter Poultry Corp.* v. *United States,* 295 U. S. 495). When rule 3 is so viewed there is ample basis in the law for its acceptance.

The order appealed from should be affirmed.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND and FULD, JJ., concur with FROESSEL, J.; DYE, J., dissents in opinion.

Order reversed, etc.