In the Matter of the CITY OF UTICA, Appellant, against WATER POLLUTION CONTROL BOARD, Respondent.

Third Department, July 31, 1958.

*Jack J. Danella, Corporation Counsel (Stanley Drejza* of counsel), for appellant.

*Louis J. Lefkowitz, Attorney-General (Richard H. Shepp* and *Paxton Blair* of counsel), for respondent.

GIBSON, J.   The City of Utica appeals from an order of the Special Term which dismissed its petition in a proceeding in the nature of prohibition brought under article 78 of the Civil Practice Act to restrain the State Water Pollution Control Board from proceeding without or in excess of jurisdiction in conducting a hearing in respect to alleged violations by the city of section 1220 of the Public Health Law.   The violations referred to in the notice of hearing are the alleged acts of the city in discharging or permitting to be discharged from its municipal sewers, into the waters of the Mohawk River and the Barge Canal, sewage and wastes causing pollution of those waters in violation of the standards of purity promulgated therefor by the board, pursuant to article 12 of the Public Health Law.

Petitioner asserts that article 12 is unconstitutional as violative of the provisions of section 1 of article III of the Constitution of the State of New York, which provides: " The legislative power of this state shall be vested in the Senate and Assembly." The petition asserts, also, that the act deprives the petitioner of due process in contravention of both the Federal and State Constitutions (U. S. Const., 14th Amdt.; N. Y. Const., art. I, § 6) and, further, that the exercise by the board of its powers under the act would unreasonably and arbitrarily restrict the city's home rule powers (N. Y. Const., art. IX).   These latter contentions are not now urged, however, and the city's brief specifically narrows the issues to that arising upon its assertion that the act constituted invalid delegation of legislative power in violation of section 1 of article III of the State Constitution.

We have concluded that the act is not within the constitutional inhibition of legislation which, in conferring authority to make regulations of a substantive nature, " fails to set sufficiently definite standards to guide and control the agency's exercise of quasi-legislative power ".   (1 Benjamin on Administrative Adjudication in New York, p. 294; *Packer Collegiate Inst.* v. *University of State of New York,* 298 N. Y. 184.)

That water pollution control is a proper subject of legislation under the police power of the State is too clear to require discussion, and petitioner does not dispute this premise. Thus, the question is solely as to the method adopted.

Article 12 of the Public Health Law, entitled "Water Pollution Control", commences with this declaration of policy: "It is declared to be the public policy of the state of New York to maintain reasonable standards of purity of the waters of the state consistent with public health and public enjoyment thereof, the propagation and protection of fish and wild life, including birds, mammals and other terrestrial and aquatic life, and the industrial development of the state, and to that end require the use of all known available and reasonable methods to prevent and control the pollution of the waters of the state of New York." (Public Health Law, § 1200.) There follows a statement of the purpose of the article as "to safeguard the waters of the state from pollution by: (a) preventing any new pollution, and (b) abating pollution existing when this chapter is enacted, under a program consistent with the declaration of policy above stated in the provisions of this article." (§ 1201.) Section 1202 defines with particularity various words and phrases used in the act, including sewage and industrial and other wastes, and, in subdivision (g) defines "Standard" or "standards" as meaning "such measure of purity or quality for any waters in relation to their reasonable and necessary use, as may be established by the board pursuant to section one thousand two hundred nine herein."

Section 1209, so referred to, entitled "Classification of waters and adoption of standards", recognizes "that, due to variable factors, no single standard of quality and purity of the waters is applicable to all waters of the state or to different segments of the same water." (Subd. 1.) The section (subd. 2) then directs that the board, after study and after public hearings upon notice, "shall group the designated waters of the state into classes * * * in accordance with considerations of best usage in the interest of the public" and with regard to the considerations mentioned in the next succeeding subdivision. The factors so to be considered are numerous and varied. They include the physical nature and characteristics of each area of water, the character of the district bordering it in the various respects enumerated, the uses being made of the waters for any of the numerous purposes stated, and the extent of their present defilement. By subdivision 5, additional factors are required to be considered, these relating to the extent to which enumerated substances, expressed in terms of their physical, chemical or

biological properties, shall be permitted in establishing standards.

The classification of waters and the standards of quality and purity thereof formulated by the board are to be adopted only after public hearing, on notice to the municipalities and others concerned (§ 1209, subd. 7) and the board's action thereon is subject to judicial review (§ 1244). Like safeguards surround the board's powers of enforcement.

In *Noyes* v. *Erie & Wyoming Farmers Co-op. Corp.* (281 N. Y. 187), the standards set for the administrative agency appear no more specific than those now before us. In approving their sufficiency, the court said (p. 195): " There is no invalid delegation of legislative power merely because the act on its face authorizes the Commissioner to fix and equalize prices, since the Legislature has provided the manner in which the Commissioner must act and the matters which he must consider as the basis for his order and that he must make findings as a preliminary to the issuance thereof." In *Johnson* v. *Parsons* (207 Misc. 107, 113–114, affd. 285 App. Div. 601), the rule was stated: " Thus it is recognized that the Legislature may, and generally must, delegate administrative functions. It is frequently difficult to distinguish between legislative and administrative acts. Even where great latitude is granted to the administrator, if the Legislature ' legislated on the subject as far as was reasonably practicable, and from the necessities of the case was compelled to leave to executive officials the duty of bringing about the result pointed out by the statute ', his functions will be held to be administrative and lawful " (citing *Buttfield* v. *Stranahan*, 192 U. S. 470, 496).

We find in the statute definite and sufficient standards to guide, and at the same time to control and limit the board in the exercise of the discretion necessarily committed to it. In the light of the recognition that, " due to variable factors, no single standard of quality and purity of the waters is applicable to all waters of the state or to different segments of the same waters " (§ 1209, subd. 1, *supra*), and considering the breadth and highly technical nature of the problem, it would seem that the Legislature could scarcely have devised more definite and specific standards.

The order should be affirmed, with $50 costs.

BERGAN, J. P., HERLIHY and REYNOLDS, JJ., concur.

Order affirmed, with $50 costs.