CHIROPRACTIC ASSOCIATION OF NEW YORK, INC., on Behalf of Itself and Its Individual Members, et al., Appellants, v. HERMAN E. HILLEBOE, as Commissioner of Health of the State of New York, Respondent.

Third Department, May 4, 1962.

*Bliss & Bouck* (*F. Walter Bliss* of counsel), for appellants.

*Louis J. Lefkowitz, Attorney-General* (*Paxton Blair* and *Edward R. Murphy* of counsel), for respondent.

GIBSON, J. The plaintiff membership corporation, claiming to represent about half of the State's chiropractors, and the individual plaintiff, a chiropractor, appeal from a judgment which dismissed their complaint in an action brought to have declared unconstitutional regulation 19 of chapter XVI of the New York State Sanitary Code and to restrain its enforcement. Concededly, such enforcement would seriously impede the practice of chiropractic.

Chapter XVI is entitled " Ionizing Radiation " and the questioned regulation 19 thereof provides as follows:

" Regulation 19. Limitations on application of radiation to humans. No person shall apply radiation to a human being unless such person is licensed or otherwise authorized to practice medicine, dentistry, podiatry or osteopathy under the provisions of the Education Law of the State of New York. Radiation shall be applied by a licensed or otherwise authorized person to only those parts of the human body specified in the law under which such person is licensed or authorized to diagnose and treat.

" This regulation shall not prohibit the use of radiation by a technician, nurse or other person, if such use is directed or ordered by a person licensed or authorized to practice medicine, dentistry, podiatry or osteopathy under the provisions of the Education Law of the State of New York.

" The sale, lease, transfer or loan of X-ray or fluoroscopic equipment or the supplies appertaining thereto, except to persons engaged in an occupation where such use is permitted, and except to hospitals, infirmaries, and medical and dental schools, institutions and clinics, is prohibited. However, this restriction shall not apply to persons intending to use such equipment and supplies solely for the application of radiation to other than human beings, nor to the acquisition of such equipment or supplies by wholesalers, distributors or retailers in the regular course of their trade or business."

The regulation was promulgated by the Public Health Council of the State of New York pursuant to section 225 of the Public Health Law, which, by subdivision 3 thereof, authorizes the council, with the approval of the Commissioner of Health, " to establish, and from time to time, amend and repeal sanitary regulations, to be known as the sanitary code of the state of New York", which may, according to paragraph (a) of subdivision 4 of the same section, " deal with any matters affecting the security of life or health or the preservation and improvement of public health in the state of New York."

It was found upon adequate evidence that when X rays of the full spine are taken, the gonads or reproductive organs of the male or female patient are in the direct primary beam and susceptible to damage affecting the reproductive cells by producing deleterious changes in the genes and chromosomes of those cells, leading to mutations and resulting in serious abnormalities in the offspring in future generations; that leukemia may also be a consequence of X-ray exposure; and that the effects of a patient's exposures are additive and cumulative.

As alleged and proven, " the practice of chiropractic is a method of detecting and correcting, by manual or mechanical means, structural imbalance, distortion or subluxations in the human body for the purpose of removing nerve interferences where such interference is the result of or related to distortion, misalignment or subluxations of or in the vertebral column." Plaintiffs further aver that it is necessary for chiropractors " to use, take and interpret X-rays of the spinal column in order to detect structural imbalance, distortion, misalignment or subluxations of and in the vertebral column ". The practice of chiropractic is not forbidden in New York; nor has the State

acted to regulate or control it, whether by requirement for licensure or otherwise; and practice within the limitations implicit in the definition which has been quoted has never been held to constitute the unlawful practice of medicine. Acts and practice exceeding, or alleged to have exceeded those limitations, have been dealt with on an individual basis. (See, e.g., *People* v. *Maybrook,* 276 App. Div. 192, affd. 301 N. Y. 637, holding sufficient an indictment which charged that the defendant chiropractor's practice entailed diagnosis and treatment of such nature as to invade the field of medicine.)

Asserting, then, that chiropractors pursue a lawful calling, plaintiffs urge that the regulation, particularly in the light of the provision thereof which excepts from the initial prohibition "the use of radiation by a technician, nurse *or other person* ", if directed or ordered by a physician, dentist, podiatrist or osteopath, contravenes the Constitution of the State of New York and, in certain respects, that of the United States as well; as constituting an invalid delegation of legislative power (cf. N. Y. Const., art. III, § 1); as discriminatory against chiropractors, and so denying equal protection of the laws (U. S. Const., 14th Amdt.; N. Y. Const., art. I, § 11); and as deprivative of property without due process of law (U. S. Const., 14th Amdt.; N. Y. Const., art. I, § 6). Thus, appellants contend, the regulation delegates to members of the medical and other professions named the power to determine who may take X rays, but fails, when so doing, to set standards for such determination or for the qualifications of the taker or the conditions of the taking. It is further urged that because, in appellants' view, a physician would not direct the use of radiation by a chiropractor, however skilled and competent, in violation of the rules of professional ethics inhibiting co-operation with cultists—the profession regarding chiropractors as such; and since, indeed, defendant Commissioner's testimony indicated his view that, under regulation 19, chiropractors would not be permitted to take X rays; the regulation is unconstitutionally discriminatory and constitutes a denial of equal protection; and serves, in addition, to deprive chiropractors of their right to pursue their calling and of the use of their lawfully acquired X-ray equipment, without due process of law.

Turning again to the proof, it seems evident to us, but in any event the promulgators of the regulation were clearly entitled to find, that medical knowledge and diagnostic skill are essential to evaluate the necessity of X-ray procedures in any particular case and to weigh the attendant risk as against the possible benefit to be derived. From the record itself, as from

the common usage among chiropractors of obtaining spinal X rays in a very large percentage of their cases (e.g., 75% to 90% in the cases of two of plaintiffs' witnesses as against less than 3% of the cases under medical supervision in Johns Hopkins Hospital), arises the inescapable inference that the technical education, training and skill of chiropractors are, in general, substantially deficient in these vital areas of knowledge and judgment. Further, it is doubtful indeed whether technical knowledge in the requisite degree, if possessed by a particular chiropractor, could be applied to the problem posed by spinal X ray without thereby constituting an unlawful invasion of the field of medical practice. In the testimony of a medical expert, which the Referee quite properly accepted, appears the succinct statement: '' The thesis on which we operate is [that] radiation is undesirable and hence the clinical indications for the taking of a film or series of films must be established beforehand.'' Among chiropractors utilizing it, however, X ray is usually the first or preliminary procedure. We find, therefore, that such relevant issues as arose with respect to the knowledge, competence and skill of chiropractors, as such, in the particular areas of judgment and decision thus far discussed, were properly resolved against appellants. We do not, however, regard the findings upon those issues as completely determinative of the case. They do serve to negate any suggestion — whether or not advanced by these particular litigants — that chiropractors, as such, are possessed of such knowledge and skill as to render arbitrary their exclusion from the class of practitioners of named professions authorized to apply radiation to human beings or to direct or order its application; and serve further to relegate chiropractors to the classes dealt with in the subsequent proviso regarding the use of radiation by other persons, including lay persons, upon the specific order or direction there provided for.

We turn, then, to appellants' argument, the main thrust of which is directed to the supposed exclusion of chiropractors from this latter class as well. It may be noted, parenthetically, that if exclusion exists it is not by reason of the proviso alone but as an effect of the extraneous factor of the ethical code to which we have alluded. We need not pass upon this factual issue, which appellants deem established, nor do we explore its legal effect, as we prefer to rest our decision upon the broader issues which the case presents and, accordingly, proceed to a consideration of them.

While disputing the validity of this specific regulation, and asserting its ineffectiveness to deal with the particular problem,

appellants narrow the issues, both legal and factual, by their statement that, " Plaintiffs do not contend that a proper regulation may not be promulgated dealing with the taking of X-rays of human beings, nor that, if improperly taken, such an operation is not attended by a certain amount of danger to the subject of the operation.'' In seeking to combat that danger, the council could and did recognize the initial necessity of technical knowledge and skill to determine, in each case, the advisability of X-ray procedure, in the light of the clinical evidence at hand, the attendant risk and possible effects, and thereupon, in the event X ray should be indicated, to direct the method, nature and number of exposures, and thus, in effect, prescribe the quantity of radiation to be applied. Consequently, the promulgators of the regulation committed an effective degree of responsibility and control to those most competent to exercise it. This was accomplished by providing that only those licensed under our law to practice medicine or one of the other professions named, and whose highly technical education, knowledge and skill had thus been determined and certified, should apply radiation, or direct its application, to a human being. Certainly the standards and requirements of qualification thus imposed could scarcely be more definite and certain or their fulfillment more readily demonstrable. Implicit in the two pertinent paragraphs of the regulation, when read together and viewed in the light of the record before us, is the intent to confer upon the authorized practitioners a measurable degree of authority and control. In context, the language as to radiation " directed " or " ordered " by a physician or other practitioner within the designated class, implies a form of direction and at least indirect supervision by professional authority, one of the more important factors of which is that thereby the amount of radiation to be applied to a particular area is prescribed and controlled by that authority. Additionally, the power of selection of the particular technician or operator implies a professional responsibility which, in practical effect, is not without weight and, indeed, its improper exercise could well give rise, in some conceivable situations, to legal liability as well.

Appellants would, however, and by what seems to us a forced construction, read into this otherwise simple provision a more complicated purpose and effect. They contend that thereby the practitioners of the professions named are empowered " to determine who may take X rays ", this pursuant to delegation of legislative power which is unlawful as fixing no standards of qualification or any guide for administrative action. (*Packer Collegiate Inst.* v. *University of State of N. Y.*, 298 N. Y. 184,

189.) The effect of the exceptive proviso permitting "other persons" to use radiation, when ordered or directed by a physician or other practitioner of a profession named, is not to confer a continuing privilege or a status akin to licensure on the part of the person directed to undertake a specific X-ray procedure upon a particular patient or to create a class of operators or technicians to which equally qualified persons are entitled to be admitted. If, however, the regulation could be deemed to set up a classification, such being conjoined with the provision for professional direction and control, a resultant exclusion of otherwise qualified persons would not necessarily — in a case involving public health and safety — invalidate the regulation (see *Matter of Stracquadanio* v. *Department of Health,* 285 N. Y. 93) but we do not reach that question. The standards which appellants find lacking do exist and are those required of the professional person at whose order or under whose direction the prescribed procedure is to be performed and the prescribed quantity of radiation applied.

That the Public Health Council chose to approach the problem from the angle of professional analysis, direction and supervision and not from that of the mechanical operation itself, or that the council failed to utilize both approaches, does not invalidate the resulting regulation. (Cf. *Radice* v. *New York,* 264 U. S. 292; *Central Lbr. Co.* v. *South Dakota,* 226 U. S. 157.)

Since our construction of the exceptive proviso denies the creation of any classification, the case of *Matter of Sausser* v. *Department of Health* (242 N. Y. 66), upon which appellants strongly rely, is inapplicable. It is clearly distinguishable, in any event, as concerning not the validity of the regulation involved but the arbitrary action of the respondent under it.

The judgment should be affirmed.

Coon, J. P., Herlihy, Reynolds and Taylor, JJ., concur.

Judgment affirmed, with costs to respondent.