*945 OPINION OF THE COURT
Victor J. Orgera, J.
This is an article 78 proceeding brought by the petitioner for a judgment setting aside the revocation of his chauffeur’s license by order of the Commissioner of Motor Vehicles and requiring the respondent to reissue the chauffeur’s license or, in the alternative, requiring the respondent to issue petitioner a restricted use license pursuant to section 530 of the Vehicle and Traffic Law. In his brief petitioner withdrew his challenge to the revocation and limited his case to whether the commissioner acted arbitrarily and capriciously in formulating regulations in conflict with statutory law and in denying the petitioner’s application for a restricted use license.
The pertinent facts are as follows: The petitioner was convicted of three violations of subdivision (d) of section 1180 of the Vehicle and Traffic Law on June 6, 1975, December 2, 1975 and September 24, 1976. As a result, the Commissioner of Motor Vehicles revoked the petitioner’s chauffeur’s license on September 24, 1976 under the authority of section 510 (subd 2, par [iv]) of the Vehicle and Traffic Law. Thereafter, the petitioner applied for, and was granted, a restricted use license by the respondent on October 25, 1976 under the authority of section 530 of the Vehicle and Traffic Law.
During the period when petitioner was using the restricted use license, he was summoned for a further traffic violation (following too closely) and for operating outside of the restrictions imposed as a condition of the restricted use license. Subsequently, he was convicted for both violations on April 7, 1977. The petitioner was also charged with another violation of subdivision (d) of section 1180 of the Vehicle and Traffic Law on February 10, 1977, while using the restricted use license, and this resulted in a further conviction on September 27, 1977. Before this latter conviction was entered, the petitioner reapplied for his chauffeur’s license which was restored on September 2, 1977, at which time the restricted use license was surrendered.
Thereafter, the petitioner received an order of revocation which directed him to surrender his chauffeur’s license to the Department of Motor Vehicles. On November 14, 1977, he duly appeared to surrender his license and to reapply for a restricted use license, which request was denied by the respondent. The petitioner then instituted this proceeding which was dismissed without prejudice on the grounds that there had been no final determination by the appeals board.
*946 The petitioner then filed an appeal with the Administrative Appeals Board which approved the revocation order and affirmed the denial of permission for petitioner to obtain a restricted use license pursuant to subdivisions (1) and (2) of section 530 of the Vehicle and Traffic Law. Whereupon the petitioner reinstituted this proceeding.
The petitioner contends that he is unqualifiedly entitled to a restricted use license in accordance with subdivisions (1) and (2) of section 530 of the Vehicle and Traffic Law, and the respondent’s refusal to issue such a license insofar as it was based on any regulation promulgated by the respondent is an ultra vires act because that regulation would be in excess of the statutory power vested in the commissioner.
The Vehicle and Traffic Law provides that a person whose license has been suspended or revoked may be issued a restricted use license "in the discretion of the commissioner of motor vehicles * * * and shall be issued only after it is established * * * that a driving license is a necessary incident to the applicant’s employment, business, trade, occupation or profession” (§ 530, subd [1]). Subdivision (3) of section 530 provides that "In the event the holder of a restricted use license is convicted of: any violation other than parking, stopping or standing or of operating a motor vehicle for other than his employment * * * or other purposes for which the license was issued, or does not comply with other requirements established by the commissioner, such license may be revoked and the licensee shall not be eligible to receive a license pursuant to this section for a period of five years from the date of such revocation”. Subdivision (10) of section 530 provides that "in order to effectuate the purpose of this section the commissioner shall establish and publish rules and regulations as may be necessary for the administration hereof.”
The commissioner thereafter promulgated regulations dealing with the issuance of the restricted use license pursuant to section 530 of the Vehicle and Traffic Law. Section 135.7 of the regulations (15 NYCRR 135.7) sets forth nine conditions under which the issuance of a restricted license shall be denied. One is where a person has had a restricted license revoked within the last five years (§ 135.7 [5]; 15 NYCRR 135.7 [5]); another is where the person has had a prior revocation or suspension of his driver’s license within the last three years (§ 135.7 [7]; 15 NYCRR 135.7 [7]). A restricted license shall *947 also be denied where the person has had a series of convictions, incidents and/or accidents which in the judgment of the commissioner tends to establish that the person would be an unusual and immediate risk upon the highways.
The petitioner contends that the regulations issued by the commissioner are in excess of the statutory power vested in him and that the commissioner’s refusal to issue a restricted use license was an ultra vires act. He argues that the only criteria set forth in section 530 and the only discretion exercisable by the commissioner relates to establishing that a restricted license is a necessary incident to the applicant’s employment and that a denial of such a license would deprive the person of his usual means of livelihood.
While the Legislature cannot delegate lawmaking functions to other bodies there is no constitutional prohibition against the delegation of power, with reasonable safeguards and standards, to an agency to administrate the law as enacted (Packer Coll. Inst, v University of State of N. Y., 298 NY 184). The Legislature may also constitutionally confer discretion upon an administrative agency providing it limits the field in which that discretion is to operate and provides standards to govern its exercise. "This does not mean, however, that a precise or specific formula must be furnished in a field where flexibility and the adaptation of the legislative policy to infinitely varying conditions constitute the essence of the program. The standards or guides need only be prescribed in so detailed a fashion as is reasonably practicable in the light of the complexities of the particular area to be regulated, since necessity fixes a point beyond which it is unreasonable and impracticable to compel the Legislature to prescribe detailed rules”. (Matter of Levine v Whalen, 39 NY2d 510, 515.)
Prior to the enactment of section 530, suspensions were for a fixed period of time after the expiration of which the license could be renewed. Upon revocation application for a new license could not be made until the expiration of six months. To meet those situations where a driver would be deprived of his usual means of livelihood on the basis of a first suspension or revocation the Legislature enacted article 21-A, entitled, "Restricted use licenses.” In broad language it provided that the issuance of a restricted use license shall be in the discretion of the Commissioner of Motor Vehicles. His discretion was not limited to the determination of whether a driving license is a necessary incident to the applicant’s employment *948 and that a denial of such license would deprive him of his usual means of livelihood. The article further provided for conditions warranting the revocation of the restricted license and provided that upon revocation the licensee would not be eligible to receive another restricted license for a period of five years from the date of the revocation. The commissioner, in setting forth the criteria for denial of a restricted use license, is well within the standards and safeguards set forth in the statute.
This court finds that the commissioner was authorized to promulgate the rules now in question; that they fall well within the statutory predicate and are therefore valid. Such a finding limits judicial inquiry to the question of whether the commissioner, in denying the application in this action, acted irrationally or arbitrarily (Matter of Ward v Nyquist, 43 NY2d 57). The court finds that he did not.
Accordingly, the petition is dismissed.