NEW YORK CITY HOUSING AUTHORITY, Landlord, *v.* GEORGE KNOWLES, Tenant.

Municipal Court of the City of New York, Borough of The Bronx, January 30, 1951.

*Gerald J. Carey, Harry Levy* and *Herman M. Frank* for landlord.

*Alan L. Dingle* and *Herbert S. Harris, Jr.,* for tenant.

FRANK, J. The problem posed in this proceeding is whether the premises occupied by the tenant are housing accommodations subject to control pursuant to the State Residential Rent Law (L. 1946, ch. 274, as amd. by L. 1950, ch. 250).

The named tenant was the owner of the building of which the apartment in question is a part, from 1943 to November 16, 1950. On that date, the tenant George Knowles conveyed his title by deed to New York City Housing Authority, the petitioner herein. This agency acquired this building by purchase, rather than by condemnation, for $9,000. It consists of two apartments, one occupied by the tenant herein and the other by a third person who paid to the former owner and now pays to this landlord $50 per month. The testimony is uncontroverted that both apartments are similar in size and in the number of rooms.

Immediately following the vesting of title, New York City Housing Authority, through its duly authorized agent, notified Knowles that he would be required to pay $85 per month for his apartment, which, as already indicated, is similar to the one for which the other occupant of the building pays $50 per month. Knowles did not deny liability for rent, did not deny the existence of the relationship of landlord and tenant, but did most emphatically dispute the amount claimed. He tendered $50 per month as rent for the apartment.

Knowles now urges that no landlord and tenant relationship exists and that there is therefore no liability for rent or for use and occupation. Among others, he cites *Preston* v. *Hawley* (101 N. Y. 586) as authority for the rule that in the absence of proof of the conventional relationship of landlord and tenant, the mere retention of possession by a vendor does not give rise

to the relationship with the consequent liability for rent for use and occupation. The cited case does so hold.

However, on a subsequent appeal of this lawsuit (*Preston* v. *Hawley,* 139 N. Y. 296, 300), the court (MAYNARD, J., writing) held: " The plaintiff repeatedly demanded rent of the defendant * * * and the defendant never disputed his liability to pay, and admitted that he ought to pay something * * * but contended that the plaintiff's charge was excessive. He disputed the amount but not the existence of the liability. * * * The silence of the parties upon the subject of compensation at the time the permission to occupy was given, does not necessarily preclude a recovery by the plaintiff. It is the settled law of the state that an agreement to pay for the use of real property, where leave to enter upon and enjoy it is given, may be implied, and it is for this class of cases that the statute we have referred to was enacted. [Cases cited.] "

The conclusion is inescapable, therefore, that the relationship of landlord and tenant exists between the parties and that there is liability for payment for the occupation of the premises in question.

The New York City Housing Authority draws no distinction between a new housing project erected, owned and operated by it, and old existing housing accommodations acquired by it for the eventual purpose of demolition to make way for new construction. We believe that such a distinction must be drawn from all the statutory enactments applicable to the question. While it is true that public housing projects are not subject to control under the rent laws (Residential Rent Law, § 2, subd. 2, par. [e]), rents in such projects may not be fixed by the uncontrolled action of the agency.

The Public Housing Law, the Federal Housing Act, and the Residential Rent Law, all provide controls on the rents in such projects. Section 2 of the Residential Rent Law exempts public housing " in which rentals are fixed by the commissioner of housing". Sections 154 and 156 of the Public Housing Law provide that tenancies in new projects are subject to rent schedule and loan and subsidy contracts. These contracts provide a ceiling for the rents to be charged, which in the case of State subsidy requires the approval of the State Commissioner of Housing. The present maximum average charge fixed by him is $9 per month per room.

It is therefore obvious that the exemption of new public housing from the controls established under the Residential Rent Law results from the fact that the architects of that legis-

lation were satisfied that sufficient protection existed for the tenants in these projects under Public Housing Law, together with the qualified exemption under the rent laws.

No such controls as protect tenants in new housing projects under the Public Housing Laws exist for tenants who occupy old housing accommodations acquired by a public housing authority. It cannot on any logical basis be argued that the Legislature would set ceilings on rent in new low cost and middle income housing projects and permit rents without maximum to be charged tenants who occupy housing accommodations in old buildings acquired by an authority for eventual demolition.

The petitioner contends that by virtue of its status, created by special legislation, as an agency of the City of New York, it is not bound by the restrictions imposed by the Residential Rent Law, with regard to maximum rents nor is any property owned by it '' housing accommodations '' subject to '' rent control ''. It relies upon section 127 of the Public Housing Law and section 9 of the Rent and Eviction Regulations of the Temporary State Housing Rent Commission and State Rent Administrator's Opinion No. 32, as its authority that it may fix such terms as it deems proper for the continued occupancy of premises acquired by it.

We find no sustenance for that position in section 127 of the Public Housing Law. Its pertinent portion is as follows: '' When title to property has vested in  *  *  *  an authority  *  *  *  the authority  *  *  *  may agree with the previous owners of such property  *  *  *  continuing to occupy or use it  *  *  *  that such former owner  *  *  *  may occupy or use such property upon the payment of a fixed sum of money for a definite term or upon the payment periodically of an agreed sum of money.''

Nowhere in the statute is there, by word or inference, language which would justify the contention that the petitioner was '' authorized to fix the rental for the premises ''. The agency is empowered to '' agree with the previous owners '' upon the terms under which he may continue in occupancy. It may permit him to remain in possession '' upon the payment periodically of an agreed sum of money '' but the section does not empower the petitioner to arbitrarily fix the remuneration it is to receive for the use and occupation of the premises. That the landlord has no such unilateral power is buttressed by its petition in this proceeding, which recites:

'' 2. That heretofore the landlord entered into agreement with George Knowles as tenant thereof  *  *  *.

" 4. That the said Tenant in and by said agreement, undertook and promised to pay to the said landlord the sum of Eighty-five ($85.00) Dollars per month, payable monthly in advance, on the first day of each month for the use and occupation of said premises."

There is no allegation in the petition alleging an exemption from a rental agreement and no proof in the record that such an agreement as alleged was ever made.

The petitioner can find little solace in State Rent Administrator's Opinion No. 32. This opinion seeks to interpret section 58 of the regulations adopted by the commission. It reads as follows:

" *No. 32 — Section 58 — Public Housing Authority.* The Housing Authority of a city acquired title to certain lands on which there are dwellings occupied by over a hundred tenants. The Housing Authority proposes to demolish these accommodations for the purpose of constructing a Housing Authority project, construction to begin as soon as possible. Must the Housing Authority comply with the eviction sections of the Regulations?

" No. Section 9 (1) specifically states that the Rent and Eviction Regulations do not apply to housing accommodations owned by a public housing authority."

The section 58 referred to deals with evictions for the purpose of demolishing an existing structure and the erection of new buildings on the site. This section and the administrator's Opinion are applicable to a holdover proceeding seeking possession, but not to a summary proceeding for nonpayment of rent.

If there be any merit to the position of the petitioner herein it must be found in section 9 of the Rent and Eviction Regulations of the Temporary State Housing Rent Commission. Subdivision 2 of section 4 of the Residential Rent Law states: " The commission may from time to time adopt, promulgate, amend or rescind such rules, regulations and orders as it may deem necessary or proper to effectuate the purposes of this act ". It does not, of course, empower the commission to legislate or to adopt regulations which exceed the permissible limits set by the statute.

Section 9 of the regulations is as follows:

" Section 9. *Housing accommodations not subject to rent control.* These regulations shall not apply to the following:

" 1. Housing accommodations owned by the United States, the State of New York, or any political subdivision thereof; or by any municipality or public housing authority."

This regulation would seem to exempt housing accommodations owned by the authority from rent control without distinction between new housing projects or old housing accommodations already in existence when acquired by the authority. It remains therefore to determine whether the Residential Rent Law creates so broad an exemption. Subdivision 2 of section 2 of the statute provides in part ,as follows: "2. ' Housing accommodation.' Any building or structure, permanent or temporary, or any part thereof, occupied or intended to be occupied by one or more individuals as a residence * * *, except that it shall not include * * * (e█housing accommodations in buildings constructed pursuant to the public housing law and in which rentals are fixed by the commissioner of housing pursuant to such law ".

The Legislature, in its wisdom, and unquestionably for the reasons previously discussed, has set a limitation in this section upon the exemption granted. The exemption is thus limited to " housing accommodations in buildings constructed pursuant to the public housing law and in which rentals are fixed by the commissioner of housing, pursuant to such law." The record in this case establishes that the building in question was not erected pursuant to the Public Housing Law and no proof was offered that the rental demanded was fixed by the Commissioner of Housing.

It is settled law that " The legislative power of this State shall be vested in the Senate and Assembly " and " This legislative power cannot be passed on to others." (*Darweger* v. *Staats,* 267 N. Y. 290, 305.) The commission, if it sought by the regulation in question to enlarge upon the powers granted it under chapter 250 of the Laws of 1950, exceeded its authority.

Judge FROESSEL writing for the Court of Appeals, in *Matter of Fed. Tel. & Radio Corp. (Corsi)*, (301 N. Y. 95), said (p. 99): " In effect, the commissioner, in contravention of the authority given him in section 530 of the statute to ' administer ' the law and ' for such [administrative] purposes ' only to make rules and regulations, has assumed legislative authority. His action is therefore, on familiar principles, invalid (*Packer Collegiate Inst.* v. *University of State of N. Y.,* 298 N. Y. 184; *Matter of Levine* v. *O'Connell,* 275 App. Div. 217, affd. 300 N .Y. 658)."

In *Matter of Small* v. *Moss* (279 N. Y. 288, 298–299), Judge LEHMAN said: " This court has repeatedly pointed out that the courts may not invade the field of discretion conferred by law upon an administrative officer. It has also pointed out that such field of discretion must be defined by the Legislature. The Legislature must set bounds to the field, and must formulate the standards which shall govern the exercise of discretion within the field. Without the second rule as a corollary to the first rule, there would be no effective restraint upon unfair discrimination or other arbitrary action by the administrative officer."

Chief Justice HUGHES writing for the Supreme Court (*Panama Refining Co.* v. *Ryan,* 293 U. S. 388, 428–429) said: " So, also, from the beginning of the Government, the Congress has conferred upon executive officers the power to make regulations,—' not for the government of their departments, but for administering the laws which did govern.' *United States* v. *Grimaud,* 220 U. S. 506, 517. Such regulations become, indeed, binding rules of conduct, but they are valid only as subordinate rules and when found to be within the framework of the policy which the legislature has sufficiently defined."

Mr. Justice CARDOZO in a concurring opinion in the case of *Schechter Poultry Corp.* v. *United States* (295 U. S. 495, 553) said: " The extension becomes as wide as the field of industrial regulation. If that conception shall prevail, anything that Congress may do within the limits of the commerce clause for the betterment of business may be done by the President upon the recommendation of a trade association by calling it a code. This is delegation running riot. No such plenitude of power is susceptible of transfer."

The statute clearly defines the policy of the State. It clearly defines and limits the buildings exempted from rent control. The building of which Knowles' apartment forms a part is not such a structure. Section 9 of the administrator's regulations insofar as it exceeds this limitation can have no such applicable force or effect in the case at bar.

Paragraph (a) of subdivision 1 of section 4 of this statute (Residential Rent Law) provides for the establishment of maximum rents for all " housing accomodations ", except those specifically exempted as follows:

" 1. (a) At the time this act shall become effective, the commission shall establish maximum rents for housing accommodations which shall be the same as those prescribed * * * pursuant to the federal housing and rent act ′ * * or **local laws** * * *. The commission may also prescribe **maximum**

rents for housing accommodations for which no maximum rent was in effect on March first, nineteen hundred fifty, as a result of decontrol by administrative action taken pursuant to the emergency price control act of nineteen hundred forty-two as amended, or the housing and rent act of nineteen hundred forty-seven as amended. Any housing accommodation for which a maximum rent is so prescribed shall be deemed a housing accommodation for all the purposes, and subject to all the provisions of this act.

'' Whenever the foregoing standard is not susceptible of application to a housing accommodation to which this act applies, the maximum rent thereof shall be fixed by the commission, having regard to the maximum rents for comparable housing accommodation and any other factors bearing on the equities involved.''

There is no proof in the record that the apartment in question ever had a maximum rent fixed and it is fairly inferable from the evidence that it was owner-occupied on all of the freeze dates specified by the Federal, local and State laws specifying such freeze dates.

The Temporary State Housing Rent Commission is therefore required to fix a maximum rent, either on the basis of a first renting, with a consent as to such maximum by both landlord and tenant (Rent and Eviction Regulations, § 21), or upon the omnibus paragraph last quoted. In the absence of proof '' that the rent demanded herein is not in excess of the maximum rental established pursuant to any local, state, or federal rent control law, or any regulation adopted pursuant thereto '' as alleged in paragraph '' 6 '' of the petition, these proceedings cannot be maintained.

There remains, only, the consideration of the contention of the petitioner that the continuance in possession by the tenant after the service of the notice demanding rent at the rate of $85 per month constitutes acquiescence by the tenant to this demand. While it is not urged, the conclusion may be drawn that its continuance in possession constitutes a consent to pay the rent demanded, then it could be considered a '' first renting '' under the regulations.

New York City Housing Authority cites three cases to support its position: *Rosenberg* v. *Radish* (191 N. Y. S. 701), *New York Housing Authority* v. *Antonello* (N. Y. L. J., Jan. 3, 1949, p. 12, col. 6); *New York Housing Authority* v. *Dobkousky* (N. Y. L. J., Dec. 27, 1947, p. 1895, col. 2).

Analyzing these cases seriatim requires the conclusion that they have no applicability to the problem posed here. The

*Rosenberg* case was decided in 1920 and involved rent for July and August of 1918. This was before any legislation controlling rents or creating statutory tenancies. The term of the tenant had ended and a sufficient notice had been given to the tenant to enable him to vacate or pay the increase for August. The court, however, held that the rent could not be increased for July.

The facts in the *Antonello* case revolve around the occupancy of an apartment in the Fort Greene Housing Project. The petitioner sought to increase the tenant's rent because of the failure of the tenant to supply satisfactory proof of financial inability to pay more than the rent initially reserved. *The petitioner sought to increase the rent to the permissible maximum as set by the Office of Housing Expediter.* (Emphasis supplied.)

In the *Dobkousky* case, an examination of the record discloses facts closely akin to those in the *Antonello* case. Both involved new public housing projects. The demand for increase was based upon the tenants' refusal to furnish proof of limited income. In both, a ceiling rent had been fixed by the Office of Housing Expediter, and the increase sought was within that limitation. It must be emphasized that in these cases under the present rent law, the projects would be exempt from control, although as discussed herein, the maximum rent would be fixed by the Public Housing Law and the Commissioner of Housing.

If anything, these citations fortify the tenant's position in the case at bar to the extent that even the New York City Housing Authority cannot demand rent in excess of a ceiling fixed by some governmental agency empowered so to do.

The petition is dismissed, without prejudice, however, to the commencement of a new proceeding after the rent for the premises has been fixed. Order filed.