Guy Gilbert Ribaudo, J.
The New York City Housing Authority, as landlord, brought this summary proceeding to evict the tenants, Willis Watson and Flora Watson, from apartment 5-3G of the Stephen Foster State Aided Public Housing Project at 70 Lenox Avenue, New York City. Consent having been given by the parties, this opinion shall constitute the decision herein and shall be incorporated in the record.
The Housing Authority followed its customary procedure of presenting to the court the testimony of one of its employees to the effect that the tenants herein were “ processed •* * * for nondesirability”; that, thereupon, the tenants were found to be nondesirable and that their tenancy was terminated because of such finding.
Landlord’s petition alleges that it is the owner and landlord of the subject premises; that it is a corporate “ governmental ” agency under and by virtue of the laws of this State and duly authorized to “ operate low-rent public housing projects for eligible persons and families of low income ”; that the lease of the apartment herein was for one month, automatically renewable for successive terms of one month, unless terminated by landlord or tenants by giving one month’s prior notice in writing; that the landlord Authority terminated the tenancy by giving due notice; that tenants’ term was over; and that tenants were unlawfully holding over,
*410 If the Authority’s case were' confined to the allegations in the petition, a final order might well issue. But the landlord Authority, to support its case saw fit to offer in evidence its resolutions (Bes. 53-3-185; Bes. 53-6-418; Bes. 53-6-417) setting forth as a ground for termination of a tenancy the 1 ‘ nondesirability ’ ’ of tenants.
Besolution 53-3-185 specifically sets out the policy and purpose of the resolution, as follows:
“ Section 1. Policy and Purpose. It is the purpose and intent of this resolution to establish
“ (1) the grounds upon which dwelling tenancy may be terminated in all of the projects now operated and to be operated hereafter by the Authority, except site properties and rehabilitated additions,
“ (2) administrative machinery for the determination of whether grounds for such termination of tenancy exist which will
“ (i) safeguard dwelling tenants against arbitrary action and
“ (ii) assure that only those tenants will continue occupancy who meet their rental obligations and the standards of eligibility fixed by law and by the resolutions and regulations of the Authority, and
“ (3) the authorization for termination of dwelling tenancy in site properties and rehabilitated additions.”
Section 2.02 of Article II then sets up 10 grounds upon which a tenancy may be terminated. One of these is: “g.Non-Desirability. Conduct or behavior of the tenant which violates the standard set forth in Section 2c of resolution entitled ‘ Besolution Belating to Desirability as a Ground for Eligibility and Establishing Tenant Beview Board’, adopted June 25, 1953, as such section is now in effect or as it may hereafter be amended.”
The landlord Authority offered in evidence a certified copy of the resolution relating to desirability as a ground for eligibility of a tenant (Bes. 53-6-417). Here the express policy of the resolution is to exclude from initial occupancy applicants for tenancy who constitute a danger to the health, safety, or morals of their neighbors, and to continue in occupancy only those tenants whose occupancy continues not to constitute “ a detriment to the health, safety or morals of * * * neighbors or the community * * * ” (at best, a vague standard over no small or technical tmatter). The evidence, hence, adduced by the landlord Authority went far beyond the bare allegations of its petition. Apparently, the landlord Authority *411 conceives that it must show more than the petition alleges. The exercise of its powers must be controlled and be consistent with its creating statute. Section 2 of the Public Housing Law authorized the spending of public money and the taking of private property for the purpose of providing “adequate, safe and sanitary low rent housing accommodations * * * for persons and families of low income ’ ’. This is declared to be “in the public interest ’ \ Just as creating and making available to families of low income ‘ ‘ adequate, safe and sanitary ” housing accommodations is in the public interest, in like manner, taking such accommodations away from persons otherwise eligible without justification and without proper safeguards is manifestly against the public interest.
The lease incorporates by reference the rules and regulations of the landlord Authority. Thus, a ground for termination of the tenancy is nondesirability. The definition of nondesirability plainly sets forth objectionable behavior. This being a ground for termination of the tenancy, and in this proceeding the ground specifically proffered by the landlord Authority, the court is called upon to determine whether or not subdivision 6 of section 1410 of the Civil Practice Act applies.
Subdivision 6 of section 1410 of the Civil Practice Act provides that a summary proceeding based upon the landlord’s finding that the tenant is objectionable “ shall not be maintainable unless the landlord shall by competent evidence establish to the satisfaction of the court that the tenant is objectionable.” (Italics supplied.) Landlord’s Exhibit 3 is the determination of the landlord’s review board and it states that the board has “ determined that the above tenant is ineligible for continued occupancy in such project on the ground of Non-Desirability.”
All of the evidence establishes that the true ground for termination of the tenancy is the objectionable character of the tenants. The fact that the landlord Authority made the nondesirability resolutions and procedures a part of its case demonstrates that the landlord Authority considered that this was the basis for termination of the tenancy and that such a showing was necessary here.
The landlord Authority now calls upon the court to disregard the plain provisions of subdivision 6 of section 1410 of the Civil Practice Act. It asserts that under the Public Housing Law (§ 37, subd. 1, par. [w]) and the decided cases, there is no defense to this proceeding and a final order must be granted by the court automatically.
It becomes necessary, therefore, for this court to determine whether the landlord Authority is exempt from the provisions *412 of the Civil Practice Act. A claim that the New York City Housing Authority was exempt from section 60 of the Civil Practice Act was rejected by the court in Stokes v. New York City Housing Auth. (110 N. Y. S. 2d 674). In that case the landlord Authority claimed that section 60 of the Civil Practice Act must yield to a shorter Statute of Limitations set up under section 157 of the Public Housing Law. In like manner, the landlord Housing Authority here claims that the Public Housing Law (§ 37, subd. 1, par. [w]) exempts it from the requirements of subdivision 6 of section 1410. Section 37 of the Public Housing Law (subd. 1, par. [w]) read as follows: “ 1. An authority shall have the following powers * " * (w) make and from time to time amend and repeal by-laws, rules and regulations not inconsistent with the provisions of this chapter ”. There is nothing in paragraph (w) of subdivision 1 of section 37 which specifically confers power to terminate tenancies or to brand tenants as objectionable or undesirable. This appears to be rather meager statutory justification for the drastic step of depriving a destitute family of “ adequate, safe, sanitary housing accommodations ”. It would appear that the landlord Authority fails to give cognizance to paragraph (k) of subdivision 1 of section 37, wherein it is given authority ‘ ‘ as lessor ” to lease or rent housing accommodations, coupled with the power to “ sue and be sued” (Public Housing Law, § 37, subd. 1, par. [s]). The statutory language in the Public Housing Law with respect to exercising its powers as a lessor in no way sets up the landlord Housing Authority as being different or singular, or a lessor sui generis from all other lessors. The Emergency Housing Rent Control Act (L. 1946, ch. 274, as amd.) specifically exempts the landlord Housing Authority from rent control, just as it exempts other kinds of lessors from its provisions. But this exemption is not a basis for exemption from the provisions of the Civil Practice Act with respect to summary proceedings instituted by the landlord Authority; nor does the exemption of public housing projects from rent control, sanction uncontrolled agency action in every sphere of tenant relations. (New York City Housing Auth. v. Knowles, 200 Misc. 156.)
There is no specific legislation anywhere which grants to the landlord Housing Authority exemption from the provisions of the Civil Practice Act. The question is, can the Housing Authority, by rule and regulation, exempt itself from the specific legislative requirement of subdivision 6 of section 1410 of the Civil Practice Act! Was it the intent of the Legislature to *413 confer such exemption by the seemingly innocuous power under paragraph (w) of subdivision 1 of section 37?
The basic rule of statutory constructions makes it obvious that no administrative body can by its own rule and regulation vitiate the impact of specific legislative enactment. (N. Y. Const., art. Ill, § 1.) The power of the landlord Authority to make rules to carry into effect the provisions of the Public Housing Law is not and cannot be a delegation of legislative authority. (Packer Collegiate Inst. v. University of the State of New York, 298 N. Y. 184,191; Matter of Federal Tel. & Radio Corp. [Corsi], 301 N. Y. 95, 99.) “ The legislative body cannot grant to any administrative body the power to make substantive rules, unlimited and unrestricted by statutory qualification. (Matter of Meit v. P. S. & M. Catering Corp., 285 App. Div. 506, 510.) The claim of special status must rest only upon clear legislative expression. No Aladdin’s lamp can magically bestow upon the landlord Authority exemption and privilege not specifically granted by the Legislature or necessarily incident to its creating statute.
In none of the decided cases with respect to undesirability was subdivision 6 of section 1410 brought to the attention of the court. (New York City Housing Auth. v. Russ, 1 Misc 2d 170 [App. Term, 1st Dept.]; New York City Housing Auth. v. Greenbaum, 1 Misc 2d 138 [App. Term, 1st Dept.].)
Prior to 1920, when subdivision 6 of section 1410 was first adopted (L. 1920, ch. 133), a tenancy could be terminated by the landlord deeming the .tenant objectionable, solely on the basis of his finding that the tenant was objectionable. It was not necessary for the landlord to prove in what manner the tenant was objectionable, the reasonableness or unreasonableness of the grounds for the determination of the landlord being immaterial, nor was the landlord required to set out in the petition in what manner the tenant’s conduct was undesirable or objectionable. (Manhattan Life Ins. Co. v. Gosford, 3 Misc. 509, 511; Wait Constr. Co. v. Loraine, 109 Misc. 527.) Then the Legislature passed subdivision 6. It was specifically directed toward the situation where a landlord sought a final order by reason of his finding that the tenant was objectionable. It imposed upon the landlord the burden of producing facts establishing that tenant was undesirable or objectionable.
The court is now asked to disregard this specific legislative requisite and is told that this summary proceeding (which is strictly statutory in its creation) must be determined without the proof required by the Civil Practice Act.
*414 The court is mindful that judicial review of administrative action is limited but this summary proceeding is based upon the exercise of proprietary powers by the landlord Authority. The court is not seeking to re-review the Authority’s administrative action; the court is only following the mandates of the Civil Practice Act for a landlord who seeks to regain possession upon a ground specifically covered by subdivision 6 of section 1410 of the Civil Practice Act.
It is, therefore, the conclusion of the court that upon this record the landlord Authority is not exempt from the burdens of subdivision 6 of section 1410 of the Civil Practice Act. As a consequence the landlord Authority has failed to meet the burden of proof there laid down.
This proceeding is different from those in the decided cases. New York City Housing Auth. v. Russ (supra, decided by a divided court with a strong dissent) held that it was unnecessary for the landlord Authority to offer any testimony as to the objectionable behavior of the tenant for the landlord to make out a prima facie case.
At the conclusion of the instant case, however, the tenant took the stand. She testified that she is a welfare client with four children; that her husband was in jail; that the asserted undesirability was not about her but because of her husband’s imprisonment. No proof to the contrary was offered by the landlord Authority.
The instant case went beyond that of a prima facie case. An issue was raised by Mrs. Watson as to a finding of undesirability which she testified had no application to her. Even though both Mr. and Mrs. Watson were colessees upon the lease, this did not make them joint tenants. (Beal Property Law, § 66.) They were tenants in common and as such each of them was entitled to possession of the entire premises. Obviously, since Mr. Watson was in jail, the tenant in possession was Mrs. Watson. The question then becomes whether or not undesirability applying to a tenant in common not in possession can be used as a ground for evicting from possession, a tenant in common who is in possession and as to whom no such undesirability has been found.
Unlike the previously decided cases, Mrs. Watson contested this proceeding not upon the fact constituting the basis for the finding of the landlord Authority, but rather that such finding was not about her as the colessee in possession (See Neto York City Housing Auth. v. Greenbaum, 1 Misc 2d 138, supra.) Implicit under the rule of Greenbaum is the right of Mrs. Watson *415 to assert that the finding of undesirability was not as to her. It is plain that unless the undesirability as found is that of the tenant in possession or a member of her household, the proceeding cannot lie. It is always open to the tenant to assert and prove that the finding of the landlord Authority was not about such tenant. This is no less than what the Appellate Term required in Greenbaum when it held that the landlord Authority must make a showing that administrative action was taken about the tenant.
On the state of this record, this proceeding does not lie. Petition dismissed.