**BOWLES, Price Administrator, et al. v. GRIFFIN.**

No. 11378.

Circuit Court of Appeals, Fifth Circuit.

Oct. 23, 1945.

Rehearing Denied Nov. 29, 1945.

Fleming James, Jr., Director, Litigation Div., O.P.A., David London, Chief, Appellate Branch, O.P.A., and Samuel Mermin, Sp. Appellate Atty., O.P.A., all of Washington, D. C., and H. C. Eberhardt, Field Enforcement Atty., O.P.A., of Valdosta, Ga., for appellant Chester Bowles, Price Administrator.

A. B. Conger, of Bainbridge, Ga., for appellee.

Before SIBLEY, HUTCHESON, and LEE, Circuit Judges.

SIBLEY, Circuit Judge.

The appellant Payne sued the appellee Griffin for penalties and attorney's fees for overcharges for housing accommodations in the Bainbridge-Cairo, Georgia, Defense Rental Area under Section 205(e) of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, §§ 901–946. He alleged that under Maximum Rental Regulation No. 49 (7 Fed.Reg. 7505), the maximum rent chageable was $20 per month, and that he was charged and he paid in excess of $5 per week for twenty weeks beginning Oct. 17, 1942, and ending March 6, 1943. Griffin denied that Payne was his tenant, and attacked the Act and the Regulation for unconstitutionality. The Price Administrator was allowed to intervene in support of the Act and the Regulation, and both were upheld as constitutionally valid after the decision in Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892. The cause then coming on for trial before a jury, receipts given to Payne by an agent of Griffin in his name were introduced, which showed payment for rent of $30 Oct. 17, 1942, $30 Nov. 17, 1942, $30 Jan. 1, 1943, $37.60 Feb. 1, 1943, and $37.60 March 1, 1943. There was some conflict in testimony as to when and how Payne became tenant and whether he rented by the week or month. There was also conflict as to what rent was in fact received for the premises on March 1, 1942, Griffin's books showing $20 charged and collected per month until May 8, and after that $9.40 per week till July 2, 1942; but he testifying that he was collecting $9.40 per week, and failed to advise his bookkeeper of the increased collections. The then tenants did not testify. It appeared that Regulation 49 (7 F.R. 7505) became effective in this Area Oct. 1, 1942, freezing all rents for housing accommodations of this class at the rental received March 1, 1942. Griffin's registration of this property was introduced and showed it as rented on that date at $9.40 per week, but stated that the first rental thereafter was at $30.00 per month and claimed the latter as the maximum rental; the $30.00 per month is, however, crossed out, and the claim for $9.40 per week is substituted. The date of this document, signed by B. V. Campbell as agent, does not appear. Griffin also introduced a report of an Examiner-Inspector of the Office of Price Administration dated Dec. 28, 1942, which stated that on investigation and affidavit of the landlord he found that the rent was on March 1, 1942, $9.40 per week and recommended that the rent remain at that figure. The Rent Director on the same date made an order that on the affidavit of the landlord he found the March 1, 1942, rent to be $9.40 per week, and fixed the maximum rent at that figure "effective this 28 day of December, 1942." To rebut this order Payne introduced a notice to Griffin from the Rent Director dated Feb. 26, 1943, that since Dec. 28, 1942, proof had been submitted that the rent on March 1, 1942, was $20 per month and that he proposed to decrease the maximum rent accordingly, and that objections and counter proof should be filed within five days. On March 18, 1943, the Rent Director made a further order which recited that he had considered the evidence and finds that it disproves the landlord's affidavit, and that the previous order of Dec. 28, 1942, is contrary to the facts and the regulations; and in addition that $9.40 per week is higher than comparable rents for similar housing accommodations; and "therefore the previous order before referred to is hereby revoked and vacated"; and "the maximum rent is hereby fixed at $20.00 per month, effective Oct. 1, 1942, the effective date of Rent Control in this area." Griffin thereafter collected only $20 per month. On this evidence the trial judge directed a verdict for the defendant; Payne and the Administrator appealing.

460

The trial judge seems to have considered that the order of Dec. 28, 1942, was controlling while it stood, and that the order of March 18, 1943, could not operate retroactively; and that neither order had been violated. The Administrator argues here that Regulation 49 was applicable all the time, and that while the order of Dec. 28, 1942, might have superseded it as to this house until revoked, the revoking order could and did establish the maximum rent from Oct. 1, 1942, retroactively, and that any question of its validity, constitutional or otherwise, can be raised only before the Emergency Court of Appeals under Sect. 204(d) of the Act.

It is suggested in oral argument that these special orders made by a Rent Director are not regulations or orders of the Administrator referred to in Section 204(d). That subsection denies jurisdiction to any court, except the Emergency Court, "to consider the validity of any such regulation, order, or price schedule." The regulations and orders are those authorized in Section 2, and again more broadly in Sect. 201(d): "The Administrator may, from time to time, issue such regulations and orders as he may deem necessary or proper in order to carry out the purposes and provisions of this Act." These Sections speak of the Administrator alone, but manifestly one man, while he could make the general provisions usually referred to as regulations, could not himself make all the determinations of more limited or individual application which are usually spoken of as orders. Accordingly Section 201(a) provides: "The Administrator may * * * appoint such employees as he deems necessary in order to carry out *his functions and duties* under this Act * * * and may utilize and establish such regional, local, or other agencies * * * as may from time to time be needed." Section 201(b), after locating his principal office in the District of Columbia, declares: "but he or any *duly authorized representative* may exercise *any or all of his powers* in any place." (Italics added.) The Administrator could appoint a Rent Director for this Defense Area and authorize him to fix by orders maximum rents for the housing accommodations therein. Cf. Shreveport Engraving Co. v. United States, 5 Cir., 143 F.2d 222. The record does not contain this Rent Director's authorization, but no one questioned his authority in the Court below, or in the briefs

filed in this Court. One of his orders was introduced and relied on by Griffin, the other by Payne and the Administrator himself as a party to the cause. We ought to assume the Rent Director was duly authorized, and his orders of Dec. 28, 1942, and March 18, 1943, above referred to are in legal effect those of the Administrator, attackable as orders fixing maximum rents only in the Emergency Court of Appeals.

But the regulations and orders of the Administrator are in their nature legislative and administrative and not judicial. The fact findings on which they are based do not constitute estoppels as by judgment. While the consideration of the validity of regulations and orders is reserved for the Emergency Court of Appeals, the application and enforcement of them is by Section 205 committed wholly to the district courts, which have the jurisdiction to find the facts to which the regulations or orders are to be applied. The penalties, for they are such, (Thierry v. Gilbert, 1 Cir., 147 F.2d 603; Lambur v. Yates, 8 Cir., 148 F.2d 137), sued for here under Sect. 205(e) are recoverable only "if any person selling a commodity *violates* (note the present tense) a regulation, order, or price schedule prescribing a maximum price", the receipt of rent for the use of a house being expressly declared to be deemed a selling of a commodity; and Sect. 205(d) declares as a defense that "No person shall be held liable for damages or penalties * * * *on any grounds* for or in respect of *anything done* * * * *in good faith* pursuant to any provision of this Act or any regulation, order * * * of the Office of Price Administration * * * notwithstanding that subsequently such provision, regulation, or order * * * may be modified, rescinded, or determined to be invalid." In this case as to each transaction of rent collection which is proven the district court has the jurisdiction and the duty to decide whether or not it was done in violation of any regulation or order existing at the time; and if at that time it was done in good faith pursuant to an order then in force, a defense is to be held established although the order has since been rescinded. Its enquiry on these points cannot be cut off and foreclosed by fact findings of the Administrator.

The general Regulation 49 freezing rents as of March 1, 1942, was of force

when the rent collections of $30 per month were made on October 17 and Nov. 17, 1942, and no special order then existed about the house in controversy. Whether there was a violation and a penalty incurred as to each of these collections depends on whether the rental collected on March 1, 1942, was $9.40 per week as Griffin registered for this property and now testifies, or was $20 per month as his books show; and this is for the Courts and not the Administrator to decide. That the Rent Director in his subsequent order of March 18, 1943, fixing the rent properly chargeable from Oct. 1, 1942, found the latter was true we do not think for the purposes of this penalty suit forecloses or in any manner determines this fact issue. His effort to make the rent order retroactive to Oct. 1, 1942, whatever the effect on establishing that as the amount properly chargeable from that date may be, cannot make that penal which was not penal when done four or five months before. Griffin's testimony as to the rent collected March 1, 1942, was not contradicted by any witness, but his books are his admissions, and are enough to make a jury issue as to these two rent collections. A verdict should not have been directed as to them.

The next collection was Jan. 1, 1943, and it and those on Feb. 1, and March 1, occurred after the order of Dec. 28, 1942, was made, and were not more than the maximum fixed by it. It may be found true that this order fixed a maximum above what ought to have been fixed according to Regulation 49, but it was not protested and brought before the Emergency Court of Appeals by Payne. It would protect Griffin in acting on it, unless such action was not in good faith, that is unless it was fraudulently and deceitfully procured by him. This order was nullified by the order of March 18, 1943, on the ground that the landlord's affidavit on which the former order was mainly based was untrue. It is no longer an order whose validity can be tested in the Emergency Court of Appeals. And if Griffin procured it by fraud he could not have acted pursuant to it in good faith, and he ought to have no advantage because of it in a court of justice. Whether he did or not, though, is a matter for the court, and the Administrator may not by a finding determine it. As to the last three collections then, the fact issues to be tried are, whether the rent on March 1, 1942, was $20 per month or $9.40 per week; and if the former, whether the order of Dec. 28, 1942,

was fraudulently procured by Griffin so that he could not in good faith have relied on it to protect him against violation of Regulation 49 as to these collections also.

The verdict ought not to have been directed. The judgment is accordingly reversed, and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.