## PORTER v. DEER.

### No. 11721.

Circuit Court of Appeals, Fifth Circuit.

April 5, 1947.

David London, Dr., Litigation Division, O. P. A., and Albert M. Dreyer, Chief Appellate Branch, O. P. A., both of Washington, D. C., and Edward N. Vaden, Regional Litigation Atty., O. P. A., of Atlanta, Ga., for appellant.

John M. Murrell and Walter E. Dence, both of Miami, Fla., for appellee.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

The appellant, as Administrator of the Office of Price Administration, brought this suit charging the appellee, defendant below, with violating the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq., in the rental of a dwelling house in the Miami, Florida, Defense Rental Area, and praying for an injunction and for statutory damages.

The Rent Regulation in the Miami Defense Rental Area went into effect on November 1, 1943, and froze all rents at the level prevailing on September 1, 1943. Appellee is the owner of a certain house in that area and rented it from October, 1942, to May 1945, at a monthly rental of $50. He registered this house with the Housing Authority as a six-room house on July 27, 1944. In August, 1945, after the tenant had moved, the appellee called at the Rental Area Office and requested of an OPA rent examiner information as to the course to be pursued in order to obtain an increase in rent. He stated that he had spent some $1,200 to $1,500 in redecorating and furnishing the house. In the course of the conversation

it was represented that the dwelling was a seven-room house rather than a six-room house as originally registered, [1] and the rent examiner suggested that, if it was a seven-room house, it was not necessary to apply for a rent increase, that the house could be re-registered as a seven-room house. The appellee thereupon re-registered the house as a seven-room house, with a monthly rental of $125; and from that date, August 7, 1945, he charged and collected rent of $125 per month.

The Administrator brought suit after the tenant failed, within the statutory period, to bring suit to recover statutory damages from the appellee for rents collected for the period August 6, 1945, to March 6, 1946, in excess of the maximum rentals established by the Regulation. He also asked for an injunction compelling appellee: (1) to exhibit to the tenants in occupancy, and to each and every future tenant, his stamped copy of the registration statement filed with the Rental Area office on July 27, 1944; (2) to obtain the present tenants' and all future tenants' signatures and the dates thereof on the back of such statement; (3) to file with the Rental Area office notices of change of tenancy; and (4) to refrain from directly or indirectly receiving any rent in excess of the maximum rent allowable under the Regulation.

The court below dismissed the suit on the ground that an administrative determination should have been obtained with respect to the two registrations, that is, the registration of the house as a six-room house on July 27, 1944, subject to a maximum monthly rental of $50, and the re-registration as a seven-room house on August 7, 1945, with a maximum monthly rental of $125; and that until it was administratively determined which was the valid registration the court would not take any action. Appealing here, the Administrator urges that in so holding the court erred.

The evidence in the court below indicates that there was no addition of space for dwelling purposes made to the housing unit by the appellee before it was re-registered. The evidence is uncontroverted that the tenant who had rented the premises from October of 1942 to May of 1945 used all seven rooms, hence the tenant in pos-

[1] The uncontroverted testimony of Mr. King, the OPA rent examiner, with reference to the conversation is as follows:

"Q. Do you remember what that conversation was about? A. Yes, sir.

"Q. Will you please state to the court and tell the Court just what that conversation was, as best you can remember? A. Yes, sir. Mr. Deer came to my office a couple of times in the hallway, and he motioned he wanted to see me, and the next day he came back and I called him in. He sat down at my desk and he said, 'I've got a house that I just spent from twelve to fifteen hundred dollars on, redecorating, adding furniture, et cetera. I want a petition for increase in rent.' I said, 'Marty, what address is your house?' He gave me the address and I said, 'I'll look up the registration.' So I went to the Registration Room, pulled the registration and examined it, and I said, 'It's a six room house,' and he said, 'No; it's a seven room house,' and I said, 'Well, the registration says when you first rented it that it was registered as a six room unit,' and I said, 'Where did the other room come from?' and he said, that has been used as a storage room, and I said, 'If that's the case, all you have to do is re-register it as a new unit. You don't have to petition for an

increase in rent' and he said, 'Are you positive?' and I said, 'Yes; that's right.' So Mr. Deer brought the papers back to me, I believe, in one or two days after that.

"Q. Mr. Deer did state definitely that one of the rooms in the house had been used for storage purposes? A. Had been used for storage purposes. He didn't state when but that's what he expressed.

"Q. Did you confer with anyone else in authority in your office regarding this matter? A. Yes, sir.

Q. Who was that person? A. Mr. Chase, who was the Chief Examiner.

"Q. Did your conversation with Mr. Chase take place in the presence of Mr. Deer? A. Yes, sir.

"Q. At that time did you repeat to Mr. Chase that Mr. Deer had stated that one room of the house had been used for storage purposes? A. Yes, sir.

"Q. Did Mr. Chase concur in your opinion? A. Mr. Chase was standing up, Mr. Carr, and I said to him, 'Here's the registration. It says six rooms, and Mr. Deer informs me now that it's seven rooms, that one of the rooms had been used as a storage space.' That was the conversation. Mr. Chase said, 'He doesn't have to petition. All he's got to do is re-register.' And I said, 'Okay.'"

session on September 1, 1943, apparently rented the same premises as the tenant in possession from August of 1945 to May of 1946. Upon the record as presently made, a justiciable controversy existed which called for court action rather than for administrative action.

If the premises occupied and rented on September 1, 1943, by the then tenant contained seven rooms, there was no justification for the second registration. Whether all seven rooms of the house were rented to the tenant in possession on September 1, 1943, was a fact, therefore, to be judicially determined. The rental in effect on September 1, 1943, remained the maximum rental chargeable until changed by affirmative action by the Administrator or his authorized agent. The rent examiner is not shown to have had authority to fix or to change the rental on housing accommodations in the Rental Area. Until such authority is shown, the fact that appellee acted upon the suggestion of the rent examiner in re-registering the house is no defense, even though the advice of the rent examiner was given with full knowledge of the facts. At most, such a showing would establish only the good faith of the appellee and reduce the penalty to the actual overcharge.

The judgment appealed from is reversed, and the cause is remanded for further proceedings not inconsistent herewith.

Reversed and remanded.

SIBLEY, Circuit Judge.

I concur in Judge Lee's opinion. This rent was raised one hundred and fifty per cent on the same housing unit, merely on the advice of two "examiners" who advised it might be, on a misstatement about the additional use of a room, or perhaps a misunderstanding about it. There is nothing in the record that shows these examiners had any authority from the administrator either to fix rents, or to advise landlords. There is only evidence that they examined houses when necessary, and reported the facts to their superiors. In Bowles, Adm'r, v. Griffin, 5 Cir., 151 F.2d 458, 460, this court assumed that a Regional Director had authority to fix rents be-cause he was doing that work, and the parties were each standing on a rent order he had made. Here by this appeal the administrator is challenging the advice the examiners undertook to give. I think the most that can be said for the advice is that it tends to show good faith to escape a triple recovery.

WALLER, Circuit Judge (concurring in result).

I concur in the reversal because I agree that a justiciable issue was before the lower Court, but I do not attribute the same significance as does the main opinion to the failure of the record to show whether or not the Examiner and Chief Examiner of the plaintiff were authorized to advise the defendant as to the course to follow in answer to his request for an increase in rent.

Those agents of the plaintiff purported to act with authority. They were officials in the Rent Control Office in that area and acted within what, to a layman, was the apparent, if not the actual, scope of official authority. There was nothing to put him on notice of their lack of authority, and if he acted on their advice in good faith, after a disclosure to them of the facts, it would come with ill grace for the plaintiff to seek to penalize him for following such advice.

Moreover, the administrator has not questioned their authority in advising defendant but merely the correctness of the advice which the agents gave. The lack of authority was not raised by the litigants either in this Court or in the lower Court. We should not inject the point into this case unless it is essential to a correct decision. I do not think the question of the authority of the plaintiff's examiners to advise defendant is necessary to a decision because if, in the absence of fraud or deception on the part of the defendant, he received, and acted upon, erroneous but non-collusive advice of agents of the plaintiff, such action by defendant ought not to call a court of conscience into action for the purpose of granting damages to such plaintiff, at least in the absence of a clear showing that prior to the bringing of this suit plaintiff had disavowed such advice and afforded defendant a reasonable opportunity to discontinue

the objectionable course of conduct by defendant taken pursuant to such advice.

A plaintiff should not be permitted in equity to use the mistake of his agent, even though the mistake be unauthorized and unratified, as the basis of a right of action whereby he expects to transmit the entire impact of such mistake to a defendant who has no complicity in the mistake.

I think, also, that if the administrator wanted to disavow the authority of his examiners to give advice to landlords in the circumstances of defendant, the burden would be on him to show that his examiners acted without authority.

And finally, Sec. 12-1603 of the OPA Manual, under the title of "Rent Examiner", provides, in part, as follows:

"01. The rent examiner is directly responsible to the rent director. He shall:

\* \* \* \* \* \*

"C: *Make determinations* on the basis of inspection reports *and on the basis of information obtained either orally or in writing from the landlords and tenants* involved in specific cases."

From the foregoing regulation it seems clear that the Rent Examiners had the authority to make the determination which they did in defendant's case.