## SCHIEFLA et al. v. CLARK.
### No. 413.

United States Emergency Court of Appeals.

Heard at Los Angeles Aug. 18, 1947.

Decided Sept. 26, 1947.

Caryl Warner, of Los Angeles, Cal., for complainants.

James A. Durham, of Washington, D. C. (Messrs. Tom C. Clark, Atty. Gen., and Harry H. Schneider, Floyd L. Cook, Charles G. Mulligan and Miss Josephine H. Klein, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and Mc-ALLISTER and LINDLEY, Judges.

LINDLEY, Judge.

■ This complaint was filed following denial of a protest of Order L-388 under Section 10 of M.P.R. 592, 10 F.R. 901, issued October 3, 1946, by VIII Regional Office of the Office of Price Administration, in which complainants' maximum prices for 6-inch and 8-inch concrete building blocks were established at the respective prices of 12 cents and 14 cents each. Inasmuch as an action to recover treble damages is pending, the controversy is not moot, and this court has jurisdiction to determine it.

In their protest complainants attacked the validity of the order upon the following grounds: (1) the regional administrator was without lawful authority to enter it; (2) the finding that the prices authorized by the order "are in line with maximum prices for comparable blocks" is erroneous; (3) the order is "unfair and oppressive" and deprives complainants of property without due process of law in that the maximum prices established are below cost of production. Another objection originally urged has been abandoned. The protest was referred to a board of review, and, upon the board's recommendation, denied.

The order which complainants attack followed certain undisputed events. Complainants, on December 26, 1945, filed with the regional office a petition for an "area price adjustment" for concrete building blocks in pursuance of the provisions of Section 17 of M.P.R. 592, averring that their cost was 12.73 cents per block and that, unless permitted to sell at 14 cents per 6-inch block and at 15 cents per 8-inch block, they would be unable to remain in business because of losses which would unavoidably be incurred. Several months later, on October 3, 1946, the regional office rather belatedly disposed of the application, holding that, inasmuch as complainants had never filed for approval their proposed ceiling prices, as required by Section 10 of M.P.R. 592, their maximum prices had never been determined and, therefore, could not be adjusted. Therefore, the regional administrator treated the application as one for establishment of maximum prices. He proceeded to determine, under the fourth pricing method prescribed by M.P.R. 592, ceiling prices for complainants' products, fixing that for the 6-inch block at 12 cents and that for the 8-inch at 14 cents. He further announced that area adjustment was not pertinent or proper, in view of the fact that complainants had taken no steps to have their prices established.

■ Complainants' most earnest contention is that the regional administrator was without authority to enter the order for the reason that such power had not been and could not constitutionally be delegated to him. Originally Subsection 10(d) of M.P.R. 592 provided that any application might be referred to the appropriate regional administrator with power to act. Under this provision, according to the administrator's statement of consideration, all applications relating to new product prices in concrete masonry had been thus referred. No further proof of this procedure appears in the record, but, in the absence of controverting evidence, we must assume that, as a matter of routine, the administrator referred this application as he did all such, as he recited in his statement of consideration accompanying amendment No. 8 (11 F.R. 11072) to Subsection 10(d). That amendment, promulgated on September 27, 1946, as the administrator announced, because he deemed it wise to "spell out specifically" the authorization of regional offices in all such references, expressly provided that each regional office should have authority to issue orders under Subsection 10(d). There can be no question that un-

der this amendment the administrator conferred upon the regional office authority to issue the order on October 3, 1946, for such was its expressed intent and purport. We are of the opinion further that in the existing state of the record, we are bound, in the absence of proof otherwise, to accept the administrator's statement that, as to all such applications, delegation of such authority had existed at all times.

■ But, say complainants, the administrator could not constitutionally delegate such authority. Respondent asserts that complainants failed to raise this point in their protest. We prefer to interpret the questions raised by complainants in the protest as so framed as to include this contention. A more serious question is whether complainants may attack the constitutionality of the delegation of authority without protesting the regulation which creates it. But this, too, we pass without decision, as we prefer to decide the issue upon the merits. In that respect, we have no doubt. First of all, Section 201(b) of the Emergency Price Control Act, 50 U.S.C.A. Appendix, § 921(b), expressly authorizes "any duly authorized representative" of the administrator to "exercise any or all of his powers in any place." Thus, Congress has extended price control authority not only to the administrator but also to his "authorized representatives." In view of authoritative decisions, the constitutionality of the Act is now beyond question. Furthermore, surely if it is within the constitutional power of Congress to grant authority to one official, the administrator, it is within its power to grant it to other officials, "authorized representatives." There is no charm in the specific title of the official to whom power is granted. The decisions in Fleming v. Mohawk Wrecking & Lumber Co., 67 S.Ct. 1129; Pinkus v. Porter, 7 Cir., 155 F.2d 90 and Bowles, Price Administrator, et al. v. Griffin, 5 Cir., 151 F.2d 458 confirm this conclusion.

■ But, say complainants, if the order is to be given retroactive effect, and if it is applicable to transactions occurring prior to its promulgation, then it is not valid for the reason that, under Collins et al. v. Fleming, Em.App., 159 F.2d 431, certiorari denied, 67 S.Ct. 1094, the administrator may not, after instituting enforcement or treble damage proceedings, enter a price-fixing order retroactive in character. We held in the Collins case that the administrator may not, by an order directed solely to that end, fix ceiling prices applicable to past sales involved in the enforcement action. It becomes necessary, therefore, to scrutinize the order and regulation in order to determine whether the order involved here is subject to the evil we there condemned and, therefore, invalid or whether it is not retroactive in a fatal sense.

We find nothing in the order that implies in any way or that would justify any inference on our part that it was ever intended that the prices established thereunder were to be anything other than prospective in character. Indeed, the language of the underlying regulation, if properly susceptible of any implication, indicates quite the contrary. Rather than adopt a construction leading to an illegal result, we rest our conclusion upon the absence of expressed or implied intent to make the order retroactive. Therefore, it is not invalid for that reason and complainants' attack upon it upon that ground must fail.

■ There remains the contention that the order is arbitrary and unreasonable, resulting in complainants being deprived of their property without due process of law. This assertion can be sustained only if we can say rightfully that there is no substantial evidence to support the finding of the administrator that the prices fixed were "in line." In reaching this conclusion, the administrator relied largely upon complainants' own figures. In their application for prices on similar blocks but containing pumice, adding to the cost, complainants asserted that the prevailing prices on their nearest competitor basis for blocks without pumice were, for the 6-inch and 8-inch sizes, 11 cents and 12 cents respectively; that they were adding to their product pumicite and calcium chloride and thus achieving better results, at an additional cost of $2\frac{3}{4}$ cents and $3\frac{1}{4}$ cents for the two blocks. Therefore, they requested a

price of 14 cents and 15½ cents for the two improved blocks. This application the administrator granted. The administrator thought that if complainants' statements contained in this application were true, then there was no occasion to adjust the prices for non-pumice blocks fixed in the order for if it cost complainants more to manufacture the blocks with pumicite, a proper price for the blocks without pumicite would be the authorized price of pumicite blocks, less the additional cost of pumice. Complainants can hardly complain of the administrator's acceptance of their own figures.

Complainants presented evidence of cost per block of 12.73 cents without certain overhead charges. Again, according to their own records, under the order, they would have realized in the period ending September 30, 1945, 13.15 cents each, at the ceiling prices, resulting in a gross profit of more than 0.4 cents per block. The record contains no evidence that this is not a normal margin in this industry. All in all, we think the evidence is not such as to justify us in holding that the administrator abused his discretion in making his determination.

Judgment will enter dismissing the complaint.