In the Matter of ROCKLAND COUNTY ANTI-RESERVOIR ASSOCIATION et al., Petitioners, against PERRY B. DURYEA et al., Constituting the WATER POWER AND CONTROL COMMISSION OF THE STATE OF NEW YORK, et al., Respondents.

Third Department, July 2, 1953.

*John T. DeGraff, John A. McKenna* and *Edward G. Roepe* for petitioners.

*Nathaniel L. Goldstein, Attorney-General (Edward L. Ryan* of counsel), for State Water Power and Control Commission, respondent.

*Randall J. LeBoeuf, Jr.* and *Craigh Leonard* for Spring Valley Water Works and Supply Company, respondent.

HALPERN, J. This is a proceeding under article 78 of the Civil Practice Act to review a determination of the Water Power and Control Commission which approved an application by Spring Valley Water Works and Supply Company (hereinafter referred to as Spring Valley) for the construction of an impounding reservoir on the Hackensack River in Rockland County, New York.

Spring Valley supplies water to several communities in the southern part of Rockland County. It is a wholly owned subsidiary of Hackensack Water Company, which supplies water to communities in the northern part of New Jersey, and which obtains its water supply from the Hackensack River through reservoirs in New Jersey.

The petitioners' principal contention before the commission was that the proposed reservoir would have a capacity greatly in excess of Spring Valley's needs and that the project was intended for the primary, if not the sole, benefit of the parent company. The commission rejected this contention and found, upon the basis of substantial evidence, that the proposed reservoir was necessary for the primary purpose of satisfying the water requirements of Spring Valley.

The commission found that Spring Valley was currently meeting its demands for service by overpumping its wells, which were its only source of supply. The commission found that the communities served by Spring Valley had been steadily growing and the needs of its industrial customers had been expanding and that " The acquisition of additional sources of supply, to provide at least 10 million gallons daily, is therefore necessary ". The commission recognized that this was in excess of Spring Valley's current water requirements but the commission concluded, upon the basis of substantial evidence, that an additional source of supply of this magnitude was essential in order to assure Spring Valley an adequate supply for its present and future needs.

The commission found that the construction of the proposed dam would impound waters sufficient to provide a dependable yield of twenty million gallons per day. About one half of this yield, or ten million gallons per day, would have to be released in order to maintain the flow of the river in proper volume, in recognition of the legal rights of the downstream owners, both in New York State and in New Jersey. The commission specifically directed that the remaining yield, about ten million gallons per day, should forever be reserved to supply the needs of the residents of Rockland County through the facilities of Spring Valley. The commission recognized that the benefit to be derived by the Hackensack Water Company and other downstream owners from the regulated flow of the river would be substantial but it held that this benefit was a necessary and incidental effect of the project.

In their brief and argument in this court, the petitioners do not directly attack the factual basis of the commission's determination nor do they attempt to demonstrate that the commission's determination did not rest upon a substantial foundation in the evidence.* The petitioners' principal attack is upon the legal sufficiency of the commission's findings, it being their contention that the commission failed to make findings upon essential issues. The evidence before the commission is discussed by the petitioners only obliquely, as tending to show the importance of the alleged omissions in the commission's findings.

We have concluded that the petitioners' objections to the sufficiency of the commission's findings, and an additional constitutional point raised by them, are all without merit.

(1) The petitioners contend that the commission failed to comply with section 523 of the Conservation Law, requiring it to make findings as to whether the plans " make fair and equitable provisions for the determination and payment of any and all legal damages to persons and property " affected by the project. We are satisfied that the commission's findings upon this point are adequate and that they are based upon substantial evidence.

---

*The petition for review alleges that the determination of the commission was "against the weight of evidence" and that "there was no competent evidence before the Commission to sustain such determination" but no effort was made in this court to sustain these allegations. On the contrary, the petitioners' counsel sought to limit the scope of the review by the following statement under the heading of "The Issue" at page 6 of their brief: "This proceeding is not in the nature of certiorari to review the determination of the Commission but rather in the nature of mandamus to compel the Commission to comply with the mandatory requirements of the Conservation Law."

In addition to making the statutory finding, in the language of the statute, the commission found that an intercompany plan had been agreed upon between Spring Valley and its parent, by which sufficient funds would be produced to pay all costs of the project, including, of course, the cost of acquisition of all necessary lands. Under the applicable statutes, the financing plan will have to be approved by the New York State Public Service Commission and the Board of Public Utility Commissioners of the State of New Jersey before it can be consummated. The details of the plan, the type of securities to be issued, their terms and conditions, and the intercompany arrangements with respect thereto, will necessarily be influenced by the views of the regulatory commissions. The Water Power and Control Commission therefore provided in its decision that its approval would not become effective until the financing plan had been approved by the regulatory commissions. Spring Valley was forbidden to initiate proceedings for the acquisition of any lands for the project until it had obtained such approval. In view of the division of jurisdiction among the various commissions, this seems to us to be a sensible, if, indeed, not the only possible, method of dealing with the problem. The petitioners' objection that this solution does not afford adequate assurance to the owners of the lands to be taken, of payment of all legal damages, is without substance. No lands will be taken until the financing plan is approved and the raising of the necessary funds is assured.

(2) The commission's findings upon the subject of the "public necessity" for the project were adequate. The commission's findings with respect to Spring Valley's need for an additional source of supply have been referred to above. In addition, the commission found what the total cost of the project would be and then found that the capital cost and the operating costs would be apportioned between Spring Valley and its parent under an intercompany plan, which it described as follows: "Since the Hackensack Water Company, a downstream owner, will benefit from a regulated stream flow, as will all other downstream owners, including the Village of Nyack, the financing plan envisions an advance from the Hackensack Company to cover the cost of the project and an apportionment of the annual cost of operation, and of debt service on the project, between the two companies. As the water requirements on the applicant's system increase, its diversion from the proposed reservoir will become greater resulting in an increase in its portion of the

annual costs, with a proportionate decrease in the charges to the Hackensack Company.''

The petitioners' principal criticism is that the commission failed to make findings as to the comparative cost of supplying water from the proposed reservoir and supplying it from additional wells. The petitioners argue that the commission should have made a finding upon this subject, as bearing upon the question of '' public necessity '' for the project. But the petitioners overlook the fact that the commission had found, upon the basis of substantial evidence, that the drilling of additional wells was not an acceptable method of supplying the water requirements of the company, because of the speculative character and unreliability of such a source and the detrimental effect which additional wells would have upon the existing wells of the company and upon the underground water table of the whole area. Although this conclusion was controverted by the petitioners' expert, the commission had the right to reject his view and to accept that of the other witnesses. In view of the commission's conclusion upon this underlying issue, no useful purpose would have been served by the commission's making any findings upon the question of the comparative cost of wells and of the reservoir. No findings on that subject were necessary in order to enable the commission to reach a fair determination upon the issue of the public necessity for the reservoir project.

Neither was there any need for the commission to make any findings upon the question of the effect of the proposed reservoir upon the water rates payable by consumers. That will depend to a considerable extent upon the apportionment of the cost of the project, from year to year, between Spring Valley and its parent company. The commission had no power to make a binding determination as to the portion of the cost which should be reflected in the rate base of each of the public utility companies. That determination may be made only by the regulatory commissions; it would have been futile for the Water Power and Control Commission to offer any speculation on the subject. Under the Public Service Law, the Public Service Commission of this State may allow Spring Valley to include in its rate base only so much of the cost of the project as is '' used and useful '' in the public service rendered by that company. The Water Power and Control Commission can hardly be criticized for deciding the issue of '' public necessity '', upon the assumption that the Public Service Commission would perform its duty under the statute fairly and justly and would make a proper determination of the rate base of Spring Valley.

It may be noted that the president of Spring Valley testified before the commission that: "I can see no possibility of water rates being increased in the Spring Valley territory because of this particular project", but the commission wisely refrained from making any findings on the subject of consumers' rates. That whole subject was properly regarded by the Water Power and Control Commission as a matter outside its province.

(3) The attack by the petitioners upon the constitutionality of section 396 of the Conservation Law is unfounded. That section provides that the regular members of the Water Power and Control Commission shall be the Conservation Commissioner, the Superintendent of Public Works and the Attorney-General. The section continues: "A deputy conservation commissioner, the head of the division of engineering in the department of public works, and a deputy or an assistant attorney-general may be designated by their respective department heads as their alternates to act on such commission and be members thereof in the place and stead of their principals. Should one of the members of the commission and his alternate both be unavailable on any particular occasion, the member may designate any suitable employee of his department to represent and act for him on that occasion. Such designations shall be in writing and filed in the office of the commission."

Section 401 of the Conservation Law authorizes the holding of hearings by any designated employee of the commission or of the three departments whose heads compose the commission.

The hearings in this case were held by an employee of the commission. Upon the basis of the proof so received, the decision was made by the commission, consisting of three members: (1) the Conservation Commissioner himself; (2) Edward L. Ryan, an assistant Attorney-General who had been designated as the regular alternate for the Attorney-General; and (3) Carl E. Haiss, assistant to the Deputy Superintendent of Public Works who had been designated by the Superintendent of Public Works as a "suitable employee of his department to represent and act for him" in this matter.

The constitutional attack is centered upon Mr. Haiss' participation in the decision. It is apparently conceded that the statute is constitutional insofar as it authorizes each member of the commission to designate a regular alternate from among the department deputies enumerated in the statute but it is argued that the latter part of the statute authorizing the designation of any suitable employee as a temporary substitute to

serve upon a particular occasion, is an unconstitutional delegation of legislative power. We find it difficult to distinguish between the two parts of the statute. We perceive no infirmity in either part.

No invalid delegation of legislative authority is involved in a statute authorizing a department head or other executive officer to delegate his powers to a substitute. We are not here concerned with the substantive standards of decision prescribed by the Legislature — they are not attacked as being too vague or in any other respect inadequate (*Packer Collegiate Inst.* v. *University of State of N. Y.,* 298 N. Y. 184). We are here concerned only with the selection of the person or persons to whom the power of decision is to be entrusted. The Legislature may constitutionally vest the power of decision, in the first instance, in the holders of designated offices and then authorize them to redelegate or subdelegate the power to other officers or employees to be selected by them. The question of whether a statute authorizes the delegation of the power of decision may sometimes " involve a difficult problem of statutory construction " (1 Benjamin on Administrative Adjudication, p. 223, footnote 2), but no constitutional question is involved. There is no problem of statutory construction in this case, the statutory provision being clear and explicit.

The use of the statutory device of authorizing the head of a department to delegate his powers to a subordinate is not uncommon; the device appears frequently in Federal legislation and it has been uniformly regarded as constitutional (Davis on Administrative Law, § 26, pp. 83–85, citing *Schiefla* v. *Clark,* 163 F. 2d 685; *La Porte* v. *Bitker,* 145 F. 2d 445; *Fleming* v. *Mohawk Wrecking & Lbr. Co.,* 331 U. S. 111).

We find section 396 of the Conservation Law to be valid and constitutional.

The determination by the Water Power and Control Commission should be confirmed, with $50 costs.

FOSTER, P. J., BERGAN, COON and IMRIE, JJ., concur.

Determination by the Water Power and Control Commission confirmed, with $50 costs.