IN THE MATTER OF THE SCHEDULE FILED BY HACKEN-
SACK WATER COMPANY, INCREASING AND CHANG-
ING RATES FOR WATER SERVICE.

HACKENSACK WATER COMPANY, APPELLANT, v. BOARD
OF PUBLIC UTILITY COMMISSIONERS, DEPARTMENT
OF PUBLIC UTILITIES, STATE OF NEW JERSEY, RE-
SPONDENT.

Argued March 21, 1961—Decided June 30, 1961.

Mr. *Randall J. LeBoeuf, Jr.,* of the New York Bar, argued the cause for appellant Hackensack Water Company (*Mr. Samuel W. Zerman,* attorney).

Mr. *Alfred W. Kiefer* argued the cause for appellant Rate Counsel (*Mr. Christian Bollermann,* on the brief).

Mr. *Richard F. Green,* Deputy Attorney General, argued the cause for respondent Board of Public Utility Commissioners (*Mr. David D. Furman,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered

PER CURIAM. This litigation arises out of a proceeding by Hackensack Water Company (Hackensack) for a revision of rates. The De Forest Lake reservoir was constructed in the State of New York by Spring Valley Water Works and Supply Company (Spring Valley). Spring Valley is a wholly owned subsidiary of Hackensack. Hackensack and Spring Valley entered into a contract for the division of the annual operating costs of the reservoir. By its terms, Hackensack agreed to pay 95% until Spring Valley should draw water from the reservoir whereupon the division of costs would vary with Spring Valley's consumption.

The Board of Public Utility Commissioners declined to accept the 95-5 division and held that a fair allocation would require Hackensack to pay 55.6% of De Forest costs. Of this, Hackensack complains. It also challenges the Board's determination of the amount of federal income taxes Hackensack will pay. Rate Counsel appealed, contending the allocation of 55.6% was too high. The Appellate Division affirmed, *In re Hackensack Water Co.,* 57 *N. J. Super.*

180 (1959), 61 *N. J. Super.* 457 (1960), and we granted petitions for certification filed by both Hackensack and Rate Counsel, 33 *N. J.* 384 (1960).

We will not disturb the judgment of the Appellate Division with respect to the division of the reservoir costs. The contract is not an arm's-length bargain. It is an agreement between a parent company and its wholly owned subsidiary. The record reveals no underlying factual detail to support the 95-5 division. The arrangement rests upon an appraisal of benefits incapable of measurement in a quantitative or other precise way. The contract would place upon Hackensack a fixed liability with respect to a reservoir which ultimately will benefit Spring Valley alone, whereas Spring Valley would contribute beyond the nominal figure of 5% only when and to the extent to which it draws water. Thus the burden of the vicissitudes of Spring Valley's experience would remain with Hackensack. We note in this connection that at the time of the contract neither party contemplated that Spring Valley would suffer the loss of the substantial water demand at Camp Shanks and a sharp reduction in consumption by Lederle and would find it necessary to dig additional wells, all of which will postpone resort by Spring Valley to the waters of the reservoir and thus continue the 95% burden upon Hackensack. We note also that the estimate of benefit to Hackensack reflected in the contract hardly squares with the finding Spring Valley obtained in New York "that the proposed reservoir was necessary for the primary purpose of satisfying the water requirements of Spring Valley" rather than for the "primary" benefit of Hackensack. *Rockland County Anti-Reservoir Ass'n v. Duryea,* 282 *App. Div.* 457, 123 *N. Y. S. 2d* 445, 447 (*App. Div.* 1953). We agree the Board's determination cannot be said to be unreasonable.

The remaining question relates to federal income taxes. The annual operating costs of De Forest total $820,939. This includes a 6% return ($419,055) upon the depreciated cost of the reservoir plus an adjustment for federal income tax

thereon ($294,316), the balance representing other operating expenses. The Board allowed 55.6% of the total, so that Spring Valley will receive from Hackensack a sum which includes 55.6% of the fair return plus federal income taxes thereon. In actual dollars, Hackensack's share is $456,442.

Hackensack and Spring Valley file a consolidated return which, the parties agree, yields a net saving of only some $8,000 as against the total taxes the companies would pay upon separate returns. The mentioned saving plays no part in the immediate dispute. In other words, the issue is not the allocation of savings effected by a consolidated return. Rather the controversy stems from the fact that in estimating Hackensack's federal liability the Board concluded it should deem the expense item which Hackensack would claim for tax purposes to be 95% of the annual cost of De Forest, i. e., $779,892, rather than 55.6% of that cost, i. e., $456,442. The result of course would be a substantially reduced estimate of the tax payable by Hackensack.

The Board's treatment either assumes that Hackensack is bound by the inter-company contract to pay the higher sum despite the Board's disallowance of the excess over $456,442, or that since the sum paid in the test year was $779,892, that figure should be projected. We are constrained to take a different view. The ultimate aim is to determine what should be the fair burden of the water consumers of Hackensack with respect to the federal tax liability. If $456,442 represents the sum those water consumers should pay with respect to the reservoir, the same figure should be used as the deductible expense in estimating Hackensack's tax liability. The contract has never been approved by either New Jersey or New York authorities. We of course do not know whether the companies will revise their agreement in harmony with the Board's action, but if Hackensack should pay the larger sum, it seems under the facts of this case to concern only the companies themselves. To use $779,892 as the expense for tax purposes while permitting Hackensack to deduct only $456,442 from its

water revenues would operate to visit upon Hackensack or Spring Valley an unrecouped expense in an amount equal to the federal tax upon the difference between those sums. Hence in projecting the tax expense, the Board should estimate the federal tax of Hackensack on the basis of the amount of the reservoir expense which it approved ($456,442) and not on the basis of a figure it has found to be unreasonable ($779,892).

The judgment of the Appellate Division is accordingly affirmed except with respect to the federal income tax expense, and as to this, the matter is remanded to the Board for further proceedings not inconsistent herewith.

No. 89:

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For reversal*—None.

No. 90:

*For affirmance and modification*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For reversal*—None.