THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
PINKY HENDERSON, Defendant-Appellant.
First District (3rd Division)    No. 80-2976

Opinion filed June 16, 1982.

Joseph A. Ettinger and Rick M. Schoenfield, both of Joseph E. Ettinger & Associates, Ltd., of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Casimir J. Bartnik, and David A. Shapiro, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE WHITE delivered the opinion of the court:
Defendant, Pinky Henderson, was charged in two informations with the offenses of possession of a controlled substance and delivery of a controlled substance. (Ill. Rev. Stat. 1977, ch. 56½, pars. 1401(c), 1402(b).) The first information charged that on September 1, 1978, defendant knowingly and unlawfully possessed a substance containing pentazocine, a controlled substance. The second information charged that on August

31, 1978, she knowingly and unlawfully delivered a substance containing pentazocine. Defendant waived her right to a trial by jury, and both charges were tried on a stipulated set of facts. The trial court found defendant guilty of both charges and sentenced her to concurrent periods of probation of thirty months.

The only issue presented on this appeal is whether section 4.1 of the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1977, ch. 91½, par. 120.4—1) which permits certain members of the Dangerous Drugs Commission of the State of Illinois (commission) to delegate representatives to serve in their places by written notice to the commission constitutes an unconstitutional delegation of legislative power because no standards are provided for the selection of representatives. Section 4.1, in relevant part, provides:

> "There is created the Dangerous Drugs Commission consisting of 11 members as follows: the Director of Mental Health, who shall be chairman, the Superintendent of Public Instruction, the Director of Corrections, the Director of the Department of Law Enforcement, the Director of Public Health, the Director of Vocational Rehabilitation, the Director of Public Aid, the Director of Children and Family Services and 3 additional public members who shall be appointed by the Governor by and with the advice and consent of the Senate. * * * *Each member, except the Chairman and the 3 public members, may delegate a representative to serve in his place by written notice to the Commission.*" (Emphasis added.)

The record on appeal contains a transcript of proceedings of the commission on August 1, 1978, when the commission purported to schedule pentazocine in Schedule II of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1977, ch. 56½, par. 1100 *et seq.*). That transcript, in turn, shows that of the 11 members specifically designated by section 4.1, only four were present at that meeting. The seven members who were authorized by statute to delegate a representative did so. At the meeting, the commission considered a resolution that pentazocine be included in Schedule II. After a lengthy hearing, the commission, composed of four members and seven representatives, voted unanimously that pentazocine be included in Schedule II.[1]

Under the Illinois Controlled Substances Act, the commission may add substances to or delete or reschedule all controlled substances in the schedules established by the Act. (Ill. Rev. Stat. 1977, ch. 56½, par.

---

[1] Subsequently, the General Assembly amended section 206 of the Illinois Controlled Substances Act to include pentazocine, effective September 6, 1979. (Ill. Ann. Stat., ch. 56½, par. 1206 (Smith-Hurd Supp. 1981).)

1201(a).) Defendant's argument is that this decision purporting to control pentazocine was void *ab initio* because the subdelegation of legislative power from individual members of the commission to their representatives was improper and unconstitutional. She contends that the charges against her should therefore be dismissed. For the reasons stated below, we disagree.

Defendant does not contend that the delegation of legislative power to the commission to add to or to delete from the schedules of controlled substances or to reschedule those already controlled is unconstitutional, when it is acting through its regular members. Such an argument would be untenable in light of *People v. Avery* (1977), 67 Ill. 2d 182, 367 N.E.2d 79. In *Avery*, our supreme court held that the legislature, under section 201(a) of the Illinois Controlled Substances Act, properly delegated to the Director of Law Enforcement, the authority, with the concurrence and approval of the Dangerous Drugs Advisory Council, to so amend the schedules, and that the legislature has provided intelligible standards to delimit that authority. The Director and Council have since been replaced by the commission, and the commission is subject to the same intelligible standards.

■■ According to defendant, we can uphold the constitutionality of section 4.1 of the Dangerous Drug Abuse Act only if we construe the authority of commission members to delegate representatives to serve to be limited. Specifically, she contends that section 4.1 should be interpreted to allow representatives to serve in the place of commission members only when the function being performed does not involve a final legislative determination. Further, she contends that a decision to add a substance involves such a determination, and that function must be performed by the commission members named by the legislature. She notes, in this regard, the other powers, duties and functions of the commission enumerated in sections 5.1 through 5.14 of the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1977, ch. 91½, pars. 120.5—1 through 120.5—14) include many which do not involve final legislative determinations. We are of the opinion, however, that section 4.1 is not susceptible to such a narrow construction. Nothing in the language of that section suggests that the authority of the commission members to delegate representatives should be so narrowly construed. And " '[t]here is no rule of construction which authorizes a court to declare that the legislature did not mean what the plain language of the statute imports.' " (*Illinois Power Co. v. Mahin* (1978), 72 Ill. 2d 189, 194, 381 N.E.2d 222.) Thus, we conclude that the legislature, in giving certain commission members the power to delegate a representative, intended that this power could be utilized by them, even when the commission is deciding whether to add, delete or reschedule

controlled substances. Consequently, the delegation which occurred here was expressly permitted by section 4.1.

Therefore, we turn to the question of the propriety of the delegation. Defendant's position is that such delegation was improper because the legislature has not established any qualifications regarding the persons to whom commission members may subdelegate as representatives. She notes that section 4.1 only requires that a commission member give written notice to the commission of his delegation to a representative.

■■ The legality of a subdelegation of an administrative agency's power is primarily a function of legislative intent. (*Hall v. Marshall* (E.D. Pa. 1979), 476 F. Supp. 262, 272, *affirmed* (3d Cir. 1980), 622 F.2d 578; see *Fleming v. Mohawk Wrecking & Lumber Co.* (1947), 331 U.S. 111, 91 L. Ed. 1375, 67 S. Ct. 1129.) As stated by Professor Davis: "When a statute is interpreted to authorize a subdelegation, a holding of unconstitutionality of the subdelegation is unlikely." (1 Davis, Administrative Law Treatise sec. 9.06, at 635 (1958); see also 1 Sutherland, Statutory Construction sec. 4.14 (1972); *United States Steel Corp. v. Pollution Control Board* (1977), 52 Ill. App. 3d 1, 367 N.E.2d 327.) Davis cites the case of *Rockland County Anti-Reservoir Association v. Duryea* (1953), 282 App. Div. 457, 123 N.Y.S.2d 445, in support of this proposition. That case involved judicial review of a commission's approval of an application for the construction of an impounding reservoir. The decision was made by a commission composed of three members, one of whom had been designated pursuant to statute by a regular member as a "suitable employee of his department to represent and act for him" in the matter. The petitioners argued that the section of the statute permitting such subdelegation was unconstitutional. In rejecting this argument, the court stated:

> "No invalid delegation of legislative authority is involved in a statute authorizing a department head or other executive officer to delegate his powers to a substitute. * * * The Legislature may constitutionally vest the power of decision, in the first instance, in the holders of designated offices and then authorize them to redelegate or subdelegate the power to other officers or employees to be selected by them. The question of whether a statute authorizes the delegation of the power of decision may sometimes 'involve a difficult problem of statutory construction', [citation], but no constitutional question is involved." 282 App. Div. 457, 464, 123 N.Y.S.2d 445, 451.

A more recent case involving a similar subdelegation is *Candlestick Properties, Inc. v. San Francisco Bay Conservation & Development Com.* (1970), 11 Cal. App. 3d 557, 89 Cal. Rptr. 897. That case involved review of a decision of a commission to deny a permit to fill a parcel of land. The

appellant argued that a section of a statute which permitted commission members to designate proxies to act and vote in their place constituted an unconstitutional delegation of legislative power because no standards were provided for the selection of proxies. In finding no improper delegation, the court observed that proxies acting in the place of commission members are guided by the same standards limiting the discretion of regular members. The court stated:

> "Here the Legislature has created an administrative tribunal and committed discretionary powers to the commission members *and their proxies*. This situation is manifestly different from a situation in which the Legislature commits discretionary powers to an administrative tribunal and the members of that tribunal delegate their power to others *without any prior authorization* from the Legislature. In this latter situation the attempted delegation would clearly be contrary to law and void. But that situation is not present here, because the Legislature specifically authorized proxies to act in the place of the commissioners." (11 Cal. App. 3d 557, 568, 89 Cal. Rptr. 897, 903.)

Another case involving a similar analysis of a subdelegation issue is *Schiefla v. Clark* (Emer. Ct. App. 1947), 163 F.2d 685.

■■ Here, the representatives who participated in the decision to control pentazocine are guided by the same intelligible standards that delimit the authority of the regular members. Morover, section 4.1 of the Dangerous Drug Abuse Act contemplates a commission composed of four members who cannot delegate to representatives and seven members who can do so. It is within the power of the General Assembly to grant authority to delegated representatives of commission members. (See *Schiefla v. Clark* (Emer. Ct. App. 1947), 163 F.2d 685, 687.) The General Assembly, by Public Act 79-1465, effective September 3, 1976, added the language permitting delegation of representatives by certain commission members. This shows a legislative intent to have input from the heads of designated State agencies who are commission members, either through the member himself or his representative. We conclude that there was no improper subdelegation of legislative power in this case.

We also observe that several of the cases upon which defendant relies, including *Horsman Dolls, Inc. v. State Unemployment Compensation Com.* (1946), 134 N.J.L. 77, 45 A.2d 681, *appeal dismissed* (1947), 329 U.S. 693, 91 L. Ed. 606, 67 S. Ct. 635, are distinguishable because the applicable statutes did not contemplate subdelegation. Thus, in *Horsman*, the court that held that the unemployment compensation commission may not delegate the power of decision in a controversy over an employer's contribution rate, found that "there is not a vestige of authority

conferred on the Commission by the statute to invest such appointee with power of decision." 134 N.J.L. 70, 80, 45 A.2d 681, 683.

Accordingly, the convictions of defendant are affirmed.

Affirmed.

McGILLICUDDY and RIZZI, JJ., concur.